**MILLER BREWING COMPANY,**
**Plaintiff-Appellant,**

v.

**JOS. SCHLITZ BREWING CO.,**
**Defendant-Appellee.**

**No. 78–2011.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1978.

Decided Sept. 6, 1979.

ther that word nor its phonetic equivalent may be appropriated as a trademark for beer." *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 77 (7th Cir. 1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). The principal question before us now is whether that determination in an interlocutory appeal should be given preclusive effect in another trademark action by Miller to enforce the same trademark against a different defendant, Jos. Schlitz Brewing Company. Holding that it should, the district court entered a summary judgment against Miller, *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 449 F.Supp. 852 (E.D.Wis.1978). The judgment is affirmed with respect to the trademark claims and vacated with respect to a joined unfair competition claim, and the case is remanded for further proceedings.

The present action was filed by Miller one year earlier than the *Heileman* action, and extensive discovery and other trial preparation took place during that year. Nevertheless, Miller chose to seek a preliminary injunction in the *Heileman* case rather than in this or any of six other cases it had earlier filed against other competitors. After our decision reversing the preliminary injunction in *Heileman,* Schlitz, which had filed a brief *amicus curiae* in this court in *Heileman,* moved in this case for summary judgment on the ground of collateral estoppel with respect to all claims of the complaint except those for knowingly false disparagement of a competitor's product.

The district court granted the motion, holding that the doctrine of collateral estoppel was applicable under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), to preclude Miller from litigating further, because this court in *Heileman,* although deciding an interlocutory appeal, had "found an insuperable obstacle to Miller's maintenance of the litigation." Therefore, under the principles laid down in *Mast, Foos & Co. v. Stover Mfg. Co.,* 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900), and *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11 (2d Cir. 1975), a final judgment without further liti-

Anthony L. Fletcher, New York City, for plaintiff-appellant.

Charles W. Bradley, New York City, for defendant-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and TONE, Circuit Judges.

TONE, Circuit Judge.

Two years ago we reversed a preliminary injunction order against infringement of Miller Brewing Company's trademark "LITE" for beer. We did so on the ground that "because 'light' is a generic or common descriptive word when applied to beer, nei-

gation was appropriate. Miller's argument that it had not had a full and fair opportunity in *Heileman* to litigate the question whether "light" or "LITE" is generic was rejected. 449 F.Supp. at 855. In granting summary judgment the district court ordered the Commissioner of Patents and Trademarks to cancel the trademark registrations of the mark, and, acting pursuant to Rule 54(b), Fed.R.Civ.P., found no just reason for delay and made the judgment final with respect to all claims that depended on the validity of the trademark. 449 F.Supp. at 855–856. This appeal followed.

## I.

### *Availability of Collateral Estoppel to a Non-Party to the Prior Case.*

■ The fact that Schlitz was not a party to the *Heileman* case will not preclude giving collateral estoppel effect to a determination necessarily made in that case, if Miller had a full and fair opportunity to litigate on the issue determined. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 332–334, 91 S.Ct. 1434. Whether a full and fair opportunity to litigate was afforded in the other action depends, *Blonder-Tongue* teaches, upon several factors, including who chose the forum, incentive to litigate, whether (speaking of the patent issues before the court in that case) "the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit," and "whether without fault of his own the [party against whom preclusion is sought] was deprived of crucial evidence or witnesses in the first litigation." *Id.* at 333, 91 S.Ct. at 1445. And, "[i]n the end, decision will necessarily rest on the trial courts' sense of justice and equity." *Id.* at 334, 91 S.Ct. at 1445.

Although the opinion in *Blonder-Tongue* demonstrates that the reasons for eliminat-

ing the doctrine of mutuality of estoppel weigh especially heavily in patent cases, they are applicable generally. *E. g., Samuel C. Ennis & Co. v. Woodmar Realty Co.,* 542 F.2d 45, 49 (7th Cir. 1976). The *Restatement (Second) of Judgments* § 88 (Tent. Draft No. 3, 1976) states,

> A party precluded from relitigating an issue with an opposing party, . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.

The "other circumstances to which consideration should be given" are those applicable in deciding whether the opposing party in the prior case should be allowed to relitigate, *id.* § 68.1, and additional ones applicable when mutuality of estoppel is lacking, *id.* § 88. Because of the nature of Miller's suits against Heileman and Schlitz and the identity of the central issue in both, none of these "other circumstances" described in the *Restatement* are present in the case at bar, so the test to be applied is whether Miller had a full and fair opportunity to litigate, which is to be determined by applying the factors stated in *Blonder-Tongue. See also Restatement, supra,* § 68.1, Comment *j,* § 88, Comment *b.*[1]

### A. *Who Chose the Forum*

Miller chose the forum in the *Heileman* case. Moreover, when Miller sued Heileman the instant action against Schlitz had been pending for one full year, during which extensive discovery and trial preparation had been conducted by both Miller and Schlitz. Nevertheless, Miller had not sought a preliminary injunction against Schlitz. Simultaneously with the filing of the *Heileman* complaint, however, Miller moved for a preliminary injunction against Heileman. Whatever the litigation strate-

---

1. There is arguably a difference of degree between the *Blonder-Tongue* standard of whether the court "wholly failed to grasp the technical subject matter and issues in suit" and the "plainly wrong" standard of the *Restatement,* Comment *j* (Tent. Draft No. 3, p. 169). Any

distinction that may exist is immaterial in this case, not only because *Blonder-Tongue* is the standard to be applied by a federal court if there is a difference but because we believe our earlier decision to be correct.

gy that motivated Miller's decision to seek a preliminary injunction and to seek it against Heileman rather than Schlitz despite the extensive preparation that had already gone into the *Schlitz* case, that decision entailed the risk, familiar to any experienced litigation lawyer, that the decision on the preliminary injunction might have the effect of determining the merits, either legally, through law of the case, or as a practical matter. In addition, Miller assumed the risk that the decision might determine the results of its other "LITE" beer cases through *stare decisis* or, since decisions on preliminary injunctions may have a preclusive effect, *see* Part II, *infra*, through collateral estoppel. The effect of an adverse determination on other cases could not have come as a surprise to Miller.[2]

## B. *Incentive to Litigate*

The factor of incentive to litigate requires little discussion. Miller had the same incentive to litigate in the *Heileman* case that it has in the case at bar, an incentive that must have been enhanced by the knowledge that what it had selected as its pilot proceeding, a preliminary injunction motion against Heileman, would be of critical importance to the case at bar and all its other pending "LITE" cases against competitors. *See* note 2, *supra*.

## C. *The Court's Grasp of the Subject Matter and Issues in Heileman*

The next factor to be considered is whether "the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and issues in suit." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, supra,* 402 U.S. at 333, 91 S.Ct. at 1445. Miller contends that it was.

The kind of judicial failure described in *Blonder-Tongue* is not merely reaching a wrong result and is, we hope, unlikely to occur except when a court is faced with esoteric and complex subject matter beyond its experience and comprehension, which the Supreme Court thought might occur in some patent cases.[3] It did not occur in the *Heileman* case.[4] The subject matter was not "technical," *see* note 3, *supra,* and was grasped by the court. The controlling issue was simple. Both parties agreed that the applicable law was correctly stated by Judge Friendly in *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir. 1976).[5] In taking this position, the parties made no distinction between the statutory and common law standards. In summarizing that applicable law, Miller ex-

2. Shortly before the oral argument in *Heileman*, Miller field a brief with the Judicial Panel on Multidistrict Litigation in which it referred to the interlocutory appeal in *Heileman* and stated,

 The decision on that appeal could be a major step in resolving many or all of the "Lite Beer" cases.

 After our decision, the Panel sustained Miller's position that the cases should not be transferred to a single district, noting in its opinion that the *Heileman* decision "could have a dispositive effect upon all other actions, at least regarding the issue of trademark validity, because of the likelihood that parties in the remaining actions" would assert collateral estoppel under *Blonder-Tongue.*

3. The failure-to-grasp factor, which refers to "technical" subject matter and issues, can be appreciated only by placing it within the context of the *Blonder-Tongue* opinion. In that case the defendant asserted the doctrine of collateral estoppel to preclude relitigation of the validity of a patent. The Court, before stating the factor in question, noted "that some courts have frankly stated that patent litigation

can present issues so complex that legal minds, without appropriate grounding in science and technology, may have difficulty in reaching decision." 402 U.S. at 331, 91 S.Ct. at 1444 (footnote omitted). *See Kaiser Industries Corp. v. Jones & Laughlin Steel Corp.,* 515 F.2d 964, 983–984 (3d Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975). The "LITE" trademark litigation does not involve comparably technical subject matter and issues.

4. Perhaps in recognition of the difficulty of persuading the same court that decided the earlier case that it had failed to grasp the legal subject matter and issues in suit, Miller's presentation blurs the distinction between failure to grasp and incorrect decision and argues that the *Heileman* decision was wrong rather than discussing any failure to grasp subject matter or issues.

5. In its brief Miller quoted at length and indorsed as "setting forth the law applicable to this case with precision, scholarship and clarity" the explanation of the four categories, of terms in the *Abercrombie & Fitch* opinion.

pressly acknowledged [6] that if "light" was generic no trademark protection could be acquired for it.[7] The issue then which Miller as well as Heileman represented to be controlling and which we treated accordingly was whether "light" is generic. The court in *Heileman* did not fail to grasp the subject matter and the issue in suit.[8]

6. After indorsing the *Abercrombie & Fitch* summary, Miller stated that the first category of trademarks "is the generic, called 'common descriptive name' in the Lanham Act, which can never become a trademark." Then, after listing the other three categories and noting that the district court had held "LITE" to be "suggestive for less filling, reduced calorie beer, though descriptive of certain beers in certain other respects," while the Patent and Trademark Office had held the word to be descriptive in 1968, Miller stated,

What matters, however, is not whether LITE is suggestive or descriptive; either way it is susceptible of appropriation as a trademark for less filling, reduced calorie beers. The question is whether it is generic for such beer.

Similarly, in a brief in this court opposing Heileman's motion for stay pending appeal, Miller quoted the same passage from *Abercrombie & Fitch* and then stated,

To summarize, very simply, if LITE (the phonetic equivalent of "light") for less-filling, low calorie beer is generic, Heileman may use LIGHT for such product in any manner it chooses. If LITE is descriptive then it may be protected only if it has acquired secondary meaning. If LITE is suggestive, it may be protected. . . . If LITE is arbitrary—which nobody suggests that it is—Heileman could not use it, or, presumably, LIGHT, at all.

7. This was in conformity with the *Abercrombie & Fitch* exposition of the law, in the course of which Judge Friendly states that "even proof of secondary meaning, by virtue of which some 'merely descriptive' marks may be registered, cannot transform a generic term into a subject for trademark." 537 F.2d at 9. *Accord, Henry Heide, Inc. v. George Ziegler Co.*, 354 F.2d 574, 576 (7th Cir. 1965). *See also CES Publishing Corp. v. St. Regis Publications, Inc., supra,* 531 F.2d at 13, cited in *Abercrombie & Fitch:*

To allow trademark protection for generic terms . . . even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are.

*Cf. Telechron, Inc. v. Telicon Corp.,* 198 F.2d 903, 906 (3d Cir. 1952); *see also* 3 *Restatement of Torts* § 721, Comment *a* (1938); *cf. Kellogg*

### D. *Deprivation of Crucial Evidence*

The last factor mentioned in *Blonder-Tongue* is whether Miller was deprived of crucial evidence or witnesses in the prior case.

Miller was not foreclosed from offering any evidence it chose in support of its mo-

*Co. v. National Biscuit Co.,* 305 U.S. 111, 116–117, 121–122, 59 S.Ct. 109, 83 L.Ed. 73 (1938), with which compare *id.* at 118–119, 59 S.Ct. at 113.

We note that a literal reading of the Lanham Act might lead to the conclusion that a generic name that has acquired a secondary meaning is entitled to registration. Section 2, 15 U.S.C. § 1052, provides that no trademark "shall be refused registration on the principal register on account of its nature," except in four described circumstances stated in paragraphs (a) through (d), none of which is pertinent for present purposes, or in circumstances described in paragraph (e), which include that the trademark "when applied to the goods of the applicant is merely descriptive or deceptively misdescriptive of them." The section then, in clause (f), provides that "[e]xcept as expressly excluded in paragraphs (a), (b), (c) and (d) of this section," nothing in the Act shall prevent the registration of a mark that "has become distinctive of the applicant's goods in commerce." *Abercrombie & Fitch* interprets this language as only allowing registration of merely descriptive terms that have acquired secondary meaning but not of "generic marks." 537 F.2d at 9. That opinion relies for this conclusion on § 14(c), 15 U.S.C. § 1064(c), which provides for cancellation of a registered mark that "becomes the common descriptive name of an article or substance," § 14(c), 15 U.S.C. § 1064(c). The word "becomes" is not viewed in either *Abercrombie & Fitch* or *J. Kohnstam, Ltd. v. Louis Marx and Co.,* 280 F.2d 437, 440 (C.C.P.A.1960), on which the former relies, as excluding a word that is already generic before the applicant uses it. Elsewhere the Act provides that "no incontestible right shall be acquired in a mark which is the common descriptive name of any article or substance, patented or otherwise," § 15(4), 15 U.S.C. § 1065(4). Although the Act refers to a common descriptive name, we believe, as explained in the *Heileman* opinion, 561 F.2d at 80, that a common descriptive adjective that is a part of the common descriptive name is governed by the same principle.

8. Miller also argues that whether "LITE" was generic was not focused upon in the district court in *Heileman.* This is belied by the description of the district court's holding in the brief Miller submitted to this court in that case.

tion for preliminary injunction in the *Heileman* case. While Miller now complains that there was no evidentiary hearing in that case, it did not seek one, choosing rather to present its case by affidavits, which of course allowed counsel to participate in the composition of the testimonial statements. Indeed, when Heileman referred in its brief in this court to the absence of an evidentiary hearing, Miller responded in its brief that "Heileman . . . has yet to suggest what such a hearing would have produced; there is no significant fundamental fact in dispute." Miller also disagreed with the argument in Schlitz' brief *amicus curiae* in that case that "more evidence on the use of 'light' in the past is required."

The only specific evidence Miller points to as not having been in the *Heileman* record is a report of a survey of "988 beer drinkers" taken in March 1978, after our decision and while the motion for summary judgment was pending in the case at bar. A similar, earlier consumer survey was before us in *Heileman,* 561 F.2d at 77, but, even assuming that the new survey is somehow better than the old, it is irrelevant.

The survey evidence could have only two purposes: to prove the meaning of the word "light" or to prove that consumers have come to associate that word with Miller's product. As for the first purpose, the meaning of a familiar English word of Anglo-Saxon heritage can hardly be established by a survey of 988 beer drinkers who had endured long exposure to Miller's advertising of the word in connection with the Miller name. When Judge Learned Hand said that whether a word is generic depends on what "buyers understand by the word," *Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921), he was referring to a coined word for a commercial product that was alleged to have become generic through common usage. He was not suggesting that the meaning of a familiar, basic word in the English vocabulary can depend on associations the word brings to consumers as a result of advertising.

This brings us to the second possible purpose of Miller's new survey evidence, to prove that consumers have come to associate the word with Miller's product. Proof of that fact would not advance Miller's trademark claim, because, as Miller acknowledged in *Heileman,* if a word is generic it "can never become a trademark." *See* note 8; *see also* 561 F.2d at 79. The March 1978 survey is therefore not essential evidence of which Miller was deprived in the earlier proceeding.

As we noted above, the Supreme Court said in *Blonder-Tongue* that the decision, to be made through the application of the foregoing factors, of whether a party has had a full and fair chance to litigate in the earlier case "will necessarily rest on the trial court's sense of justice and equity." 402 U.S. at 334, 91 S.Ct. at 1445. Having carefully reviewed the trial court's decision in light of the relevant factors, we conclude that it is correct.

## II.

### The Interlocutory Form of the Heileman Decision

■ The fact that our judgment in *Heileman* was rendered in an appeal from a preliminary injunction order does not preclude application of collateral estoppel. Although such a judgment will ordinarily not foreclose subsequent litigation on the merits, *Berrigan v. Sigler,* 162 U.S.App.D.C. 378, 382 & n.11, 499 F.2d 514, 518 & n.11 (D.C.Cir.1974); 11 Wright & Miller, *Federal Practice and Procedure,* § 2962 at 630–631 & n.29 (1973), it will be given preclusive effect if it is necessarily based upon a determination that constitutes an insuperable obstacle to the plaintiff's success on the merits, *cf. Mast, Foos & Co. v. Stover Mfg. Co., supra,* 177 U.S. at 495, 20 S.Ct. 708; *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 287, 61 S.Ct. 229, 85 L.Ed. 189 (1940); *CES Publishing Co. v. St. Regis Publications, Inc., supra,* 531 F.2d at 15; Wright & Miller, *Federal Practice and Procedure, supra,* § 2962 at 629 & n.27; 7 *Moore's Federal Practice* ¶ 65.21 at 65–156 to 65–157 (2d ed. 1978).

To be "final" for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. "Finality" in the sense of 28 U.S.C. § 1291 is not required. Judge Friendly said in *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962),

Whether a judgment, not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i. e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). *See also Kurlan v. Commissioner*, 343 F.2d 625, 628–629 n.1 (2d Cir. 1965); *United States ex rel. DiGiangiemo v. Regan*, 528 F.2d 1262, 1265 (2d Cir. 1975), *cert. denied*, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976).

*Restatement (Second) of Judgments* § 41 (Tent. Draft No. 1, 1973) has adopted the view of the Second Circuit. *See id.* § 41, Reporter's Note to Comment *g*. Section 41 states:

The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect.

*Restatement, supra*, § 41, Comment *g*, discusses the factors relevant to the determination of "firmness" called for in § 41 as follows:

[T]he court should determine that the decision to be carried over was adequately deliberated and firm even if not final in the sense of forming a basis for a judgment already entered. This preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

These standards are satisfied by the *Heileman* decision. For purposes of the law of collateral estoppel, that decision was a final determination that "LITE" is generic and therefore not entitled to trademark protection. *See Restatement, supra*, § 41, Comment *g*, Illustration 1. That determination is an insuperable obstacle to Miller's claims based upon its ownership of trademark rights in "LITE" in that case, *CES Publishing Corp. v. St. Regis Publications, Inc., supra*, 531 F.2d 11, and all other cases.

### III.

#### *Cancellation of Registration*

Miller argues that even if "light" in generic its trademark registrations of "LITE" should not be ordered cancelled, because the misspelled version is not generic. *Heileman* is said to have determined "at most," only that "light" is generic, since *Heileman* only used the latter spelling. Moreover, only Miller and its predecessor Meister Brau have used "LITE," so it cannot be generic, says Miller.

As we pointed out in *Heileman*, however, 561 F.2d at 79, a generic term cannot be appropriated through the device of misspelling it. This rule has been applied to a word registered under an earlier trademark statute, *Standard Paint Co. v. Trinidad Asphalt Mfg. Co.*, 220 U.S. 446, 455, 31 S.Ct. 456, 55 L.Ed. 536 (1911), and no reason has been suggested why it should be inapplicable to a word registered under the Lanham

Act. The district court did not err in ordering the registrations cancelled.

## IV.

### Protection from Unfair Competition

 In addition to alleging trademark infringement, Miller included in its complaint, as amended, a claim that Schlitz is "palming off [its] product as Miller's." The district court dismissed this claim as well as the trademark claims on the ground of collateral estoppel.

In its brief before us Miller ties its unfair competition argument to its trademark claim, arguing that, even if generic, "LITE" is entitled to some protection if it can be shown that some consumers associate that word with Miller. In three of the cases on which Miller relies, a formerly exclusive trademark right to a proper name or a coined word had been lost because the name had become generic, and the court required a latecomer using that word to state the source of the product. *Singer Mfg. Co. v. June Mfg. Co.*, 163 U.S. 169, 186, 16 S.Ct. 1002, 41 L.Ed. 118 (1896); *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577, 581 (2d Cir. 1963); *DuPont Cellophane Co. v. Waxed Products Co.*, 85 F.2d 75, 82 (2d Cir.), *cert. denied*, 299 U.S. 601, 57 S.Ct. 47, 81 L.Ed. 391 (1936), 304 U.S. 575, 58 S.Ct. 1047, 82 L.Ed. 1539 (1938). The other case, *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118–119, 59 S.Ct. 109, 83 L.Ed. 73 (1938), does contain a statement supporting the argument that, even in the case of a common generic name, if many people have come to associate the name with the plaintiff, the defendant, in exercising its right to use that name, should be required to "use reasonable care to inform the public of the source of its product." *Id.*

at 119, 59 S.Ct. 109. In the case at bar, the only alleged Schlitz use, "Schlitz Light Beer," identifies Schlitz as the source of the product.

The absence of trademark protection does not mean that Miller must submit to a competitor's palming off of its product as the product of Miller. The difficulty with its palming off claim, as presently alleged, is that it is based upon the same facts as the trademark infringement claims. These facts are in substance that Miller sold large quantities of light beer under the trademark "LITE," expended large sums to promote that trademark, and thereby succeeded in gaining recognition for the word among beer drinkers as the name for Miller's light beer; and that Schlitz intends to sell a beer labelled "Schlitz Light Beer," which will cause consumer confusion because of the similarity of "LITE" and "Light," which are pronounced identically. Miller does not allege that consumer confusion or a likelihood thereof arises from failure of Schlitz adequately to identify itself as the source of its beer; from a confusingly similar dress used by Schlitz for its beer, which might result from such factors as the label's style, the relative size of words in the label, the configuration and color of the label, and even the misspelling of "light" in the label; from Schlitz' use of advertising calculated to lead to confusion; or from any cause except Schlitz' use of the word "light" in the product name "Schlitz Light Beer." [9] Since Schlitz is entitled to use that word in describing its beer, that use alone cannot give rise to an unfair competition claim. *Cf. Kellogg Co. v. National Biscuit Co., supra*, 305 U.S. at 116–117, 121–122, 59 S.Ct. 109, 83 L.Ed. 73.[10] Accordingly, in

---

9. For examples of facts not establishing trademark infringement but nevertheless held to amount to unfair competition, *see Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 382–386 (5th Cir. 1977); *American Safety Table Co. v. Schreiber*, 269 F.2d 255, 275–276 (2d Cir. 1959); *cf. Midwest Plastics Corp. v. Protective Closures Co.*, 285 F.2d 747, 750 (10th Cir. 1960).

10. *Compare Standard Paint Co. v. Trinidad Asphalt Co.*, 220 U.S. 446, 461, 31 S.Ct. 456, 55 L.Ed. 536 (1911) (decided under Trademark Act of 1905), *with Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 335 n.24, 59 S.Ct. 191, 83 L.Ed. 195 (1938) (decided under 1920 Act). The *Nu-Enamel* case involved a term the Court viewed as "descriptive." *See Abercrombie & Fitch Co. v. Hunting World, Inc., supra*, 537 F.2d at 9 n.10.

view of the facts on which the palming off claim is based, the district court correctly concluded that what had been alleged was not sufficient to constitute unfair competition.

Nevertheless, in view of general allegations concerning customer confusion incorporated by reference into the palming off allegations of the amended complaint, the liberal rules of federal pleading, and the fact that certain claims are still pending in the district court and presumably must be tried, we think it would be unjust to foreclose Miller from amending to state an unfair competition claim if it has one. Such a claim would presumably require little if any additional discovery and could be tried with the claims that are still pending in the district court.[11] Accordingly, with respect to the palming off claim alleged in the amended complaint, the summary judgment is vacated and the case is remanded for further proceedings.

The judgment of the district court is affirmed in part and vacated in part, and the case is remanded for any further proceedings required by this opinion.

Affirmed In Part; Vacated And Remanded In Part.

---

11. As to jurisdiction, § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a limited federal remedy for unfair competition. *See L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.,* 214 F.2d 649, 650–651 (3d Cir. 1954); *Alfred Dunhill Ltd. v. Interstate Cigar Co.,* 499 F.2d 232, 236 (2d Cir. 1974). To the extent that conduct is alleged that would not be actionable under § 43(a) but would be under state law, pendent jurisdiction would presumably exist. We express no definitive opinion on these matters or concerning choice of law over any state law claim that might be alleged, as to which, *see* 1A *Moore's Federal Practice* ¶ 0.326 (2d ed. 1978).