**MILLER BREWING COMPANY,
Plaintiff-Appellee,**

v.

**FALSTAFF BREWING CORPORATION,
et al., Defendants-Appellants.**

**No. 80–1794.**

United States Court of Appeals,
First Circuit.

Argued May 7, 1981.

Decided July 16, 1981.

Lewis A. Kaplan, New York City, with whom Richard Wasserman, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, David A. Schechter, and Schechter, Abrams & Verri, Providence, R. I., were on brief, for defendants-appellants.

Anthony L. Fletcher, New York City, with whom Timothy M. Broas, Conboy, Hewitt, O'Brien & Boardman, New York City, Edwin H. Hastings, Edward J. Regan, Tillinghast, Collins & Graham, Providence, R. I., Allan W. Leiser, and Quarles & Brady, Milwaukee, Wis., were on brief, for plaintiff-appellee.

Charles W. Bradley, Milton Springut, and Cooper, Dunham, Clark, Griffin & Moran, New York City, on brief for Jos. Schlitz Brewing Co., amicus curiae.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, WYZANSKI, Senior District Judge.*

---

* Of the District of Massachusetts, sitting by designation.

WYZANSKI, Senior District Judge.

This appeal raises the question whether the plaintiff is precluded by virtue of principles of collateral estoppel from denying that the term "LITE" when applied to beer (1) has a generic meaning indicating membership in a class of beers having a reduced caloric content, and (2) is not susceptible of possessing a *de jure* "secondary meaning" indicating that a particular producer is the source of the beer.

The plaintiff, Miller Brewing Co., brought against Falstaff Brewing Corporation, a Rhode Island corporation, and Falstaff Brewing Corporation, a Delaware corporation, (collectively referred to as "Falstaff") an action for preliminary and permanent injunctions. The complaint alleged that "LITE" was the recognized brand name under which Miller marketed its reduced calorie beer and that Falstaff's use of the word "LITE" in "FALSTAFF LITE BEER" constituted a false designation of origin in the violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and constituted unfair competition.[1]

After a hearing upon the prayer for a preliminary injunction, the district court, in its October 29, 1980 opinion, found *inter alia* that (1) Miller since 1972 had sold millions of barrels of a reduced calorie beer under the name "LITE," (2) Miller had spent millions of dollars in advertising its beer under that name, (3) Miller is likely to succeed in proving (a) that the consuming public has come to associate the symbol LITE with the Miller brand of reduced calorie beer, and (b) that "LITE" presently signifies to the public Miller's and no one else's product, and (4) Falstaff since July 11, 1980 has been brewing reduced calorie beer, and has been bottling and shipping it in containers bearing the label "Falstaff Lite."

Proceeding from those findings, the district court concluded that (after a hearing on a final injunction) Miller is likely to

---

1. Other allegations in the complaint are not now relevant as they were not the basis of the temporary injunction here on appeal.

prevail on the merits despite the principles of collateral estoppel. In reaching this conclusion, the district court successively considered the judgments theretofore rendered in *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978) (hereafter *Heileman*), *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), *cert. denied*, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980) (hereafter *Schlitz*), *Anheuser-Busch, Inc. v. Miller*, No. 77–100 C (E.D.Mo., August 17, 1978) and *Miller Brewing Co. v. Olympia Brewing Co.*, No. C77–65T (W.D.Wash., Feb. 27, 1978)—cases in which Miller had sought to prevent brewers other than Falstaff from using the word "LIGHT" in marketing their brands of lower calorie beer but in which Miller was denied relief because "LITE" was a "generic" term and so could not acquire a secondary meaning. In the district court's view the judgments in those cases did not collaterally estop the plaintiff Miller in the instant case because on a plenary hearing it was probable that the court would find that whatever may have been the situation when those cases were decided, the term "LITE," as applied to beer, has since 1978 acquired a *de jure* primary meaning as the product of Miller.

Accordingly, the district court on October 30, 1980 enjoined Falstaff preliminarily, pending trial of the action upon the merits, from selling or marketing a reduced calorie beer using the symbol or bearing the word "LITE."

Falstaff filed a motion to stay the injunction on the ground that two days after its entry we, in *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 634 F.2d 1, 2 (1st Cir. 1980), despite our suggestion to the contrary in *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 374–375 (1st Cir. 1980), held that a generic term can never become susceptible of trademark protection by proof of a *de facto* secondary meaning. The district court granted the motion.

Thereafter, Falstaff took an appeal from the preliminary injunction. We reverse the district court and vacate the preliminary injunction.

Appealing from the district court, Falstaff contends that the injunction should be vacated on two independent grounds: (1) Miller was precluded by principles of collateral estoppel from securing it and (2) the trademark "LITE" is a generic term which is incapable of acquiring a *de jure* secondary meaning. On the first ground, without deciding *de novo* the issues raised in the second ground, we reverse the district court and vacate the preliminary injunction.

Merely in order to decide the collateral estoppel question, we begin with a summary statement of trademark law with respect to the possibility of a generic word possessing a *de jure* "secondary meaning."

In the law governing trademarks and unfair competition, "a generic or common descriptive term is one which is commonly used as the name or description of a kind of goods." *Heileman*, 561 F.2d at 79; a "secondary meaning" with respect to a generic term is *any other meaning* than the descriptive meaning, regardless of whether that other meaning was chronologically first, or whether that other meaning has become dominant in the public mind.

██ Under no circumstances is a generic term susceptible of *de jure* protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) or under the law of unfair competition.[2] In two leading cases Judge Friend-

---

2. *S. S. Kresge Co. v. United Factory Outlet, Inc.*, 634 F.2d 1, 2 (1st Cir. 1980); *Reese Publishing Co., Inc. v. Hampton International Communications, Inc.*, 620 F.2d 7 (2d Cir. 1980); *Miller Brewing Co. v. Jos. Schlitz Brewing Co.*, 605 F.2d 990 (7th Cir. 1979), *cert. denied*, 440 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *Miller Brewing Co. v. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir. 1977); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4 (2d Cir. 1976); *CES Publishing Corp. v. St. Regis Publications, Inc.*, 531 F.2d 11 (2d Cir. 1975). See 3 R. Callman, Law of Unfair Competition, Trademarks and Monopolies § 71.1 at 16 (1980 Supp. by S. Kleinman); 1 J. McCarthy, Trademarks and Unfair Competition § 12.15 at 432–434 (1973).

ly gave the following rationale for the rule: "No matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir. 1976). "The reason is plain enough. To allow trademark protection for generic terms, i. e. terms which describe the genus of goods being sold, even when these have been identified with a first user, would grant the owner of the mark a monopoly since a competitor could not describe his goods as what they are." *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 13 (2d Cir. 1975).

Having in mind the foregoing background of the law of trademarks and unfair competition, we address Falstaff's collateral estoppel contention.

If we indicated the contrary by our statement in *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 374–375 (1st Cir. 1980), that "a strong showing of secondary meaning may be sufficient to grant a right to exclusive use," we were in error. Perhaps we are to be excused on the basis that a dictum of Justice Brandeis in *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938), involves precisely the same error. He suggested that an owner of a generic trademark might be entitled to protection if he showed "that the primary significance of the [generic] term in the minds of the consuming public is not the product but the producer."

*Singer Mfg. Co. v. Briley,* 207 F.2d 519 (5th Cir. 1953), (relied upon by the district court) does not hold that a term which has currently a generic meaning may also have a *de jure* secondary meaning. What appeared in that case was that originally the name Singer was not a generic name but exclusively the name of a producer. However, by 1896 the name of Singer indicated to the public a distinctive style of machine as well as the origin of manufacture. *Singer Manufacturing Company v. June Manufacturing Co.,* 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118 (1896). Probably as a result of the entry into the sewing machine market of many new manufacturers, by the second half of the Twentieth Century the name of Singer had wholly lost in then contemporary public usage its generic meaning and signified only that the goods came from one particular manufacturer —Singer. *Because in 1953 the term Singer had*

Miller as the holder of the purported trademark "LITE" brought against Heileman an action to restrain it from using in connection with its beer the word "LIGHT," and an earlier action against Schlitz to restrain it from using in connection with its beer the same word "LIGHT." In *Heileman* and likewise in *Schlitz* among the issues raised were whether "LITE" was a generic name, and if so whether Miller could with respect to "LITE" have a *de jure* secondary meaning signifying that the source of "Miller's LITE" was Miller. In both *Heileman,* 361 F.2d at p. 81, and *Schlitz,* 605 F.2d at p. 996, the first question was answered affirmatively and the second question was answered negatively. Moreover, in *Schlitz,* 605 F.2d at p. 996, in response to an issue tendered by Miller, the court determined that "For purposes of the law of collateral estoppel, that [*Heileman*] decision was a final determination that 'LITE' is generic and therefore not entitled to trademark protection." [3]

in contemporary usage no generic meaning, Singer had "recaptured" the *exclusivity* it possessed before the name Singer had acquired a generic meaning. *Singer Mfg. Co. v. Briley,* pp. 520–521 n.3 par. (4). Where a generic association of a word or term has become obsolete and is discoverable only by resort to historical sources or dictionaries compiled on historical principles to preserve from oblivion obsolete words, then, from the viewpoint of trademark and like law, the word or term is no longer a generic word. *See* 1 J. Gilson, Trademark Protection and Practice, § 2.02(6) at 2–26–27 (1980). ("Older, generic associations may be unknown to later generations").

3. The quoted language as well as footnote 8 of *Schlitz,* 605 F.2d at p. 994, preclude a contention that *Heileman* determined only that "LITE" was "the phonetic equivalent of" (*see* 561 F.2d at p. 81) or a misspelling of the generic term "LIGHT." We, therefore, need not consider Miller's argument that a person owning a putative trademark using a term which is merely orally or visually equivalent to a generic term may have protection against a competitor who uses precisely the same equivalent. Admittedly, to such a case some of the reasoning we quoted from Judge Friendly's opinions would be inapplicable; that is, a competitor might be enjoined from using the equivalent (which may owe its value chiefly to the original user's efforts and the merits of his product) while being left free to use the truly descriptive

The determinations in both *Heileman* and *Schlitz,* having been based on a full and fair consideration of the issues, bind Miller in the subsequent litigation not only against the defendants in those cases but also against Falstaff as an alleged infringer of Miller's putative trademark "LITE." *Schlitz,* 605 F.2d at p. 996. It is a general rule that "A party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." Restatement, Judgments, (Second) T.D. No. 3 (April 15, 1976) App. § 88, pp. 161–162. That general rule already has been applied by the Seventh Circuit to preclude Miller from relitigating the *Heileman* issues in an action brought by Miller against Schlitz. *Schlitz,* 605 F.2d at 996. *Cf. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). (Collateral estoppel bars patentee from relitigating issue of validity of patent where issue has been decided adversely to him in a prior case in which patentee had a full and fair chance to litigate issue of validity.) We reject Miller's argument that in an action against Falstaff, Miller is not bound by determinations adverse to it in the *Heileman* and *Schlitz* cases because the Court of Appeals of the Seventh Circuit failed to grasp the technical subject matter and issues in suit.

We disagree with the district court's view that Miller is not collaterally estopped because of a supposedly dramatic alteration between the 1970's and the 1980's in the low calorie beer market and in public understanding of the term "LITE." For present purposes, we assume that a judgment determining a state of facts existing in the 1970's may not preclude a fresh determination of a state of facts existing in the

1980's. But in the instant case the evidence before the district court showed, at best, merely that in the last half decade the public perception of Miller as the source of "LITE" has increased and become *dominant* in the public mind. However, evidence to that effect is irrelevant. *See Abercrombie & Fitch Co. v. Hunting World, Inc.* and footnote 2 *supra.* The dicta from *Kellogg Co. v. National Biscuit Co.* and *Keebler Co. v. Rovira Biscuit Corp.* quoted in footnote 2 *supra,* which indicate that such evidence would be relevant, are unsound as shown by other authorities cited in the same footnote and the reasoning of Judge Friendly in the *Abercrombie & Fitch Co.* and *CES Publishing Corp.* cases quoted in the text of this opinion. There was no evidence that as of today "LITE" has *ceased* to have in current usage among consumers of beer the generic meaning, "beer of low caloric content." Hence, *Singer Mfg. Co. v. Briley,* cited in footnote 2 *supra,* does not apply.

We have no occasion to consider the appellant Miller's claim that a preliminary injunction might be sustained on the basis that Miller's complaint includes a trade dress claim and that the evidence supports such a claim. The district court did not premise *this* preliminary injunction upon that basis, and so we may not sustain it on that basis.

*Reversed. Preliminary injunction vacated.*

generic word. But *see Leon Finker, Inc. v. Schlussel,* 469 F.Supp. 674, 678–679 (S.D.N.Y.

1979), *aff'd,* 614 F.2d 1288 (2d Cir. 1979) and authorities there cited.