Harold RUBIN, Plaintiff,

v.

CITY OF BERWYN, etc., et al., Defendants.

No. 79 C 2460.

United States District Court, N.D. Illinois, E.D.

June 24, 1982.

Edward T. Stein, Linda Fisher, Singer & Stein, Chicago, Ill., for plaintiff.

Russell Hartigan, Scanlan & Hartigan, Chicago, Ill., James Schirott, Schirott & Elsner, Itasca, Ill., for defendants.

MEMORANDUM OPINION

KOCORAS, District Judge:

Plaintiff Harold Rubin's two-count civil rights action against the City of Berwyn

and several of its public officials challenges both the facial validity and the application to plaintiff of certain City licensing and permit ordinances relied upon by defendants to deny Rubin the right to operate newsstands in Berwyn. Plaintiff also alleges that the defendant's reliance on a certain state statute as a reason for the denial is violative of equal protection in that three other newspaper stands are licensed by Berwyn in apparent derogation of the statute. Plaintiff seeks injunctive and declaratory relief, and damages, for the alleged violations of his First and Fourteenth Amendment rights. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343.

Harold Rubin is a Berwyn resident who has, since 1977, been denied the licenses or permits necessary to operate newsstands. Defendants denied forty of Rubin's permit applications on July 28, 1978. On March 28 and May 21, 1979, six additional applications were rejected. Plaintiff brought this action on June 14, 1979; his original complaint did not contest the facial constitutionality of the ordinances, but only their application to him. After the parties filed a stipulated statement of facts and cross-motions for summary judgment, Judge McMillen granted Rubin partial summary judgment on April 4, 1980.

Judge McMillen held that Rubin had a clear First Amendment right to sell and disseminate public information, and noted that defendants now license "at least three locations on state routes within the city", in apparent derogation of *Ill.Rev.Stat.,* Ch. 121, § 9–113.1. That statute provides in relevant part that:

[N]o commercial establishment for serving motorists or highway users shall be located within the right-of-way of, or on publicly owned or publicly-leased land acquired or used for or in connection with a Freeway or a controlled access highway
. . . .

Judge McMillen ruled that defendants had failed to demonstrate a compelling state interest for rejecting Rubin's applications, where other applications for licenses had been "granted under substantially the same conditions as his." *Rubin v. City of Berwyn,* 79 C 2460 (Memo Opinion, April 4, 1980). However, because Judge McMillen recognized that defendants had the right to regulate the use of city streets and other public facilities to assure public safety, and because there had never been any hearing or determination regarding the public safety aspects of plaintiff's requested locations, Judge McMillen held that he could not decide which of plaintiff's forty-six applications were properly denied, nor issue a mandatory injunction requiring the defendants to issue any specific license or licenses to plaintiff. *Opinion* at 8.

Plaintiff filed an amended complaint to conform with Judge McMillen's opinion, and sought unsuccessfully to resolve this matter consistent with that opinion. He subsequently filed a second amended complaint on July 30, 1981. Count I of the latter complaint challenges the facial validity of Chapters 8 and 18 of the Berwyn City Code, which govern the issuance of business licenses and newsstand permits. Count II alleges that the ordinances and state statute were and are being unconstitutionally applied to deny Rubin the right to operate six newsstand locations for which he is presently seeking permits. On July 31, 1981, plaintiff sought a preliminary injunction directing defendants to issue the requested six newsstand permits.

*Findings of Fact*

1. The stipulated Statement of Facts filed December 21, 1979 is incorporated by reference into these findings of fact, with the following amendments:

a) Defendant Joseph J. Lanzillotti is the present mayor of the defendant City of Berwyn. Defendant Thomas A. Hett was the mayor during the period that plaintiff sought his permits and when the original complaint was filed. Defendant Jeanne Deckman is presently the Acting Commissioner of Public Works for the City. A. Lovisek, the Commissioner of Public Works during the period that plaintiff sought to obtain his permits, is now deceased, and plaintiff has named

his estate as a successor defendant in the second amended complaint.[1]

b) Berwyn's city council and mayor govern and make policy decisions for the City. Defendant Lanzillotti is responsible for the review, approval, and issuance of licenses and permits. Defendant Hett was responsible for fulfilling these duties while in office; at all relevant times, he was aware and informed of plaintiff's attempts to obtain newsstand licenses. Defendant Deckman receives applications for certain licenses and permits, investigates them, and grants or denies them. Defendant Lovisek was responsible for these same duties while in office. These defendants formulated and acted pursuant to an official City policy in denying plaintiff a permit to own and operate newsstands in the City.

c) The ordinances at issue here consist of Article XXXIX of the Berwyn City Code (Ch. 8, § 240 et seq.) and Chapter 18 of the Code. The relevant statutory provision is Ill.Rev.Stat. Ch. 121, § 113.1.

d) The defendant City allows numerous unlicensed newsboxes and ad benches to be placed on the City's public streets and on State rights-of-way within Berwyn.

e) There are three existing newsstands presently operating on State rights-of-way in Berwyn. These newsstands are officially sanctioned by defendants.

### Conclusions of Law

Plaintiff meets all the requirements for a preliminary injunction: (1) it is very probable that he will succeed on the merits of his action; (2) he is and will suffer irreparable injury; (3) his injury is significantly more serious than any possible harm to defendants; and (4) the granting of a preliminary injunction will serve a strong public interest. See Ekanem v. Health & Hospital Corp. of Marion County, 589 F.2d 316, 319 (7th Cir.1978).

### A.

As previously described, plaintiff has already partially succeeded on the merits of this case by virtue of Judge McMillen's decision. In fact, the only changes that have taken place in this lawsuit since Judge McMillen's opinion are that plaintiff has attacked the ordinances and statute on new grounds, and defendants have shifted the grounds for their denial of plaintiff's applications. Thus, in their most recent arguments in response to plaintiff's motion for a preliminary injunction, defendants have abandoned their former reliance on the Berwyn ordinances and now rely solely on Ill.Rev.Stat. Ch. 121, § 9–113.1 for the denials. Significantly, defendants have not even responded to Rubin's broad-based assault on the constitutionality of the City ordinances. They argue instead that "a declaration as to the constitutionality of (the Berwyn ordinances) need not even be reached because the matter is one which can be resolved by avoiding the constitutional issue and deciding the matter strictly on questions of local law—whether Ill.Rev. Stat., Ch. 121, § 9–113.1 permits the use urged by Rubin." (Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction, at 8.) Plaintiff responds that the question of the effect of the statute has already been settled by Judge McMillen, and that the constitutionality of the ordinances must be addressed because defendants previously relied on them to bar Rubin's applications. This court agrees with the latter position.

■ The general rule regarding the judicially-created, "law of the case" doctrine is not an inflexible command to apply previously-determined law to all later proceedings in a case; however, when a court states a rule of law or reaches a holding which is to be applied in the case before it, the law that will normally be applied to the same issues in subsequent proceedings in

---

**1.** Defendants object that there has been no showing that leave was ever granted to join Lanzollitti or the Lovisek estate, and that they have neither been served nor appeared. However, Fed.R.Civ.P. 25(d)(1) provides for an automatic substitution when an official is succeeded, and while it is true that Lovisek's estate has not been properly named as a defendant, plaintiff seeks no equitable relief against the estate.

that case is established. *See James Burrough Ltd. v. Sign of Beefeater, Inc.,* 572 F.2d 574 (7th Cir.1978). Here, Judge McMillen held unequivocally that defendants' reliance on *Ill.Rev.Stat.,* Ch. 121, § 9–113.1 as a bar to Rubin's applications was clearly unjustified. Defendants have not offered any reasons why they should be entitled to relitigate this ruling, nor have they demonstrated that it was erroneous.

■ Accordingly, this court finds that Judge McMillen's prior determination regarding this issue should be given preclusive effect for the reasons stated in his Opinion. *Cf. Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir.1979); *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962) (Friendly, J.).

Moreover, defendants have conceded that if newsstands of the type sought by plaintiff are permitted under the statute, then "Rubin is entitled to the licenses for which he sought application." (Defendants' Memorandum, at 8.) In light of the uncontested fact that defendants now permit three newsstands to operate under conditions identical to those sought by Rubin, it is difficult to perceive how defendants can presently assert in good faith that the statute should bar plaintiff's requested newsstands.[2] And this court is unwilling to presume, without any evidentiary or factual showing, that Rubin will be "serving motorists or highway users", and thus fall under the prospective language of § 9–113.1. Defendants' assertion that Rubin's desire to operate newsstands on rights-of-way in Berwyn demonstrates that he will necessarily serve motorists or highway users is purely speculative at this stage, and therefore cannot support the denial of the requested licenses or permits.

Finally, defendants' assertion that the three existing newsstands pre-date the passage of § 9–113.1 and therefore should be disregarded insofar as the consideration of

the applicability of the statute is concerned is both legally and factually incorrect. Even assuming that § 9–113.1 applied here to bar such operations and that there were some reason why its enactment in 1959 would not affect pre-existing newsstands (which defendants have not sought to support or demonstrate), it is clear that these newsstands have not only changed owners several times since their establishment, but have had their licenses renewed despite § 9–113.1. *See* Defendants' letter of March 3, 1982 regarding the newsstands.

Although defendants seemingly no longer rely on the Berwyn City Ordinances to deny plaintiff's newsstand applications, and urge that a determination concerning their constitutionality be avoided, this court finds it necessary to address the constitutional issues raised by plaintiff, for it is clear that defendants have in the past employed the ordinances to block plaintiff's applications and there is no reason to believe that such conduct will not recur. *See generally,* Exhibits attached to the Stipulation of Facts. Accordingly, this court holds that Chapters 8 and 18 of the City Code must be struck down as violative of the First and Fourteenth Amendments for several reasons.

■ Chapters 8 and 18, which are reproduced in the Stipulation of Facts, impose a prior restraint on protected First Amendment activity without required due process safeguards. As Judge McMillen previously recognized, the right to sell and disseminate public information is protected by the First Amendment, and any governmental restriction of this right must be supported by a compelling state interest. *See* Opinion at 5, citing *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Here, § 8–240 requires that anyone desiring to operate a newsstand first obtain a license or a permit, and §§ 8–243 and 18–10 provide that an executive licensor must affirmatively approve the application. The licensor has unfettered

---

2. On March 16, 1982, defendants moved this court to abstain from ruling on the applicability of *Ill.Rev.Stat.,* Ch. 121, § 9–113.1 to this case.

In view of the foregoing discussion and Judge McMillen's Opinion on this issue, defendants' motion is plainly untimely, and is denied.

authority and discretion to approve an application; for example, § 18–5 explicitly allows the mayor, in his discretion, to decide who is a "suitable and proper person(s) to be licensed." This authority or discretion can plainly be used to deny applications based on the content, or supposed content, of the proposed communication, or because of dislike of the speaker or his point of view. This seems to be what occurred here. *See* Stipulation of Facts, Exhibit 2.

When a prior restraint exists and promotes the possibility of selective and prejudicial suppression of protected speech, the Supreme Court requires it to be accompanied. by stringent procedural safeguards, and approaches it with a heavy presumption of invalidity. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1976). The elements of a prior restraint are:

1) The person desiring to engage in the communication must apply to a government agent prior to engaging in the desired communication; 2) the government agent is empowered to grant or deny the application on the basis of the content of the proposed communication; 3) approval of the application depends on the agent's affirmative action; and 4) approval is not routinely granted but is the result of the exercise of the agent's judgment.

*Id.* at 554, 95 S.Ct. at 1244.

In this case, the required due process safeguards are not present. Those safeguards are:

1) The licensor must grant or deny the permit in the briefest specified time frame possible and that time must be specified in the statute; 2) If the permission as sought is denied or revoked, the ordinance must require the licensor to institute within a specified brief time a proceeding for temporary, preliminary and permanent injunction to restrain the proposed expression asserted to be constitutionally protected, and assume the burden of proof in such judicial proceedings; 3) Any restraint imposed in advance of a final judicial determination on the merits must be limited to preservation of the

status quo for the shortest fixed period; and 4) It must assure a prompt final judicial decision.

*Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 738, 13 L.Ed.2d 649 (1975). None of these provisions are found in the ordinances at issue; there are no time limits set, and no provisions for instituting judicial proceedings exist. In the absence of such protections, First Amendment freedoms are easily imperiled. *See Southeastern Promotions, supra,* 420 U.S. at 559–60, 95 S.Ct. at 1246–47.

Moreover, Chapters 8 and 18 are overbroad, and sweep protected activity within their scope, particularly when considered in light of the unlimited discretion vested in the licensors. Thus, § 18–5 allows the licensing authority to exercise unlimited "discretion" to determine who is a "suitable and proper person to be licensed"; § 18–10 permits the consideration of the "character and fitness" of the applicant to conduct the business; § 18–24 grants a department head who "desires" the right to refuse to renew a license; and § 8–243 instructs the Commissioner of Public Works to use "judgment" in deciding how much investigation of an applicant is "necessary" before granting or denying a license application. The information that can be required in investigations under these ordinances does not appear to have any rational relationship to a legitimate governmental purpose, nor is there a compelling state interest demonstrated. These ordinances can obviously allow continued rejections of any application at the whim of the licensor, since only he knows the "correct" answers to investigatory inquiries. *See Hynes v. Mayor of Oradell,* 425 U.S. 610, 96 S.Ct. 1755, 48 L.Ed.2d 243 (1976). That seems to have been what occurred here.

Although there is no doubt that Berwyn would be entitled to reasonably regulate or limit the locations or numbers of requested newsstands, these ordinances fail completely to specify narrow, objective, or definite time, place, or manner restrictions consonant with First Amendment considerations. *See, e.g., Shuttlesworth v. City of Birming-*

*ham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969); *Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938). They therefore allow the arbitrary denial of applications for permits, and are accordingly unconstitutional. *See Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Shuttlesworth v. City of Birmingham, supra.*

■ In addition, the relevant sections of Chapters 8 and 18 are unconstitutionally vague in that they give insufficient notice of what conduct to avoid. Due process is offended when penal statutes are unclear and do not inform the reader what the State commands or forbids. *See Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). It is particularly important to have clear and precise regulatory standards where First Amendment considerations are potentially implicated. *See NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1962); *Hynes v. Mayor of Oradell, supra,* 425 U.S. at 620, 96 S.Ct. at 1760. As the foregoing discussion of overbreadth makes clear, these ordinances are imprecise and vague in that they rest on completely subjective concepts regarding what is "suitable and proper." It is not even clear which publications are covered by the ordinances or who has final authority in making a determination on an application; not only do §§ 8–246 and 8–247 not define "newspaper", but § 8–243 seems to give the Commissioner of Public Works the right to grant or deny permits, while § 8–246 provides for the approval of the City Council. It is virtually impossible to determine which ordinance applies in a particular instance, even though each contains different and possibly conflicting requirements. For example, under Chapter 18 the mayor is the licensor and is directed to consider the applicant's character, while Chapter 8 contains no such provision. And the amount of investigation considered "necessary" under § 8–243 is completely undefined. These ambiguous provisions confer vague and unrestricted power on the licensor to grant or deny licenses, and are therefore unconstitutional. *See Lovell v. City of Griffin, supra,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938).

Finally, the ordinances have been applied in a discriminatory manner which violates the First Amendment, due process, and equal protection. As previously mentioned, three other newsstands exist on state routes in Berwyn, and unlicensed newsboxes stand along Berwyn streets. This failure to act in an evenhanded manner with respect to newsstands led Judge McMillen to require defendants to demonstrate that their concerns about possible traffic problems amounted to a compelling state interest; defendants have not done so. And, as noted in *Carey v. Brown,* 447 U.S. 455, 461–62, 100 S.Ct. 2286, 2290–91, 65 L.Ed.2d 263 (1980):

> [W]hen government regulations discriminate among speech related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests and the justifications offered for any distinction it draws must be carefully scrutinized.

This standard has plainly not been met here.

### B.

■ Plaintiff Rubin has suffered and will continue to suffer irreparable injury by virtue of the existence of Chapters 8 and 18, and because of the discriminatory treatment his applications received. Rubin has no plain, adequate, or complete remedy to speedily redress the alleged constitutional injuries other than this action. While even a short denial of First Amendment rights inflicts irreparable injury, *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1978), Rubin has been denied a newsstand permit or license for over three and one-half years. Such a delay of the exercise of protected First Amendment activity is tantamount to its denial. *See National Socialist Party of America v. Village of Skokie,* 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977). Moreover, the distinct possibility of future harm exists, as suppression of speech in one case often has a chilling effect on future speech. *Thornhill*

*v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

## C.

The public interest in First Amendment activity is the cornerstone of this case. That interest is ill-served by the continued existence of unconstitutional ordinances, nor is it served by failure to enjoin defendants' discriminatory conduct. On the contrary, granting a preliminary injunction in this case will strongly serve the public interest by eliminating prior restraints on the dissemination of protected materials without stringent due process protections. Nor will allowing plaintiff to operate newsstands in Berwyn impose adverse consequences on defendants, for they are still plainly entitled to reasonable regulation of plaintiff's activities consonant with public safety concerns. In short, there is no doubt that the adverse effects to plaintiff of the denial of the requested licenses clearly outweigh any speculative harm which could be inflicted on defendants or the public by virtue of the operation of the requested newsstands.

## D.

Still unresolved, however, is the question of defendants' legitimate interest in public safety in this situation. Defendants have never undertaken any effort to determine which, if any, of the six requested locations pose actual safety concerns or hazards. In actuality, therefore, little or nothing has changed factually in this case since Judge McMillen's Opinion of April 4, 1980. On the present record, this court is still unable to determine whether defendants have a reasonable and legitimate basis to deny Rubin the right to operate one or more newsstands. It is clear, however, that defendants bear the burden of demonstrating that any future denials are justified by legitimate traffic concerns. *Elrod v. Burns,* 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). Accordingly, unless defendants conduct a neutral evidentiary hearing within 30 days at which they demonstrate a compelling state interest in bar-

ring one or more of the requested locations on the basis of legitimate safety concerns, defendants are ordered to issue the six requested licenses.