**MILLER BREWING COMPANY,**
Plaintiff-Appellee,

v.

**G. HEILEMAN BREWING COMPANY, INC., Defendant-Appellant.**

No. 77-1246.

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1977.

Decided Aug. 17, 1977.

Rehearing and Rehearing En Banc Denied Sept. 14, 1977.

James Van Santen, Chicago, Ill., Steven E. Keane, Milwaukee, Wis., for defendant-appellant.

Glen H. Kanwit, Chicago, Ill., Anthony L. Fletcher, New York City, Allan W. Leiser, Milwaukee, Wis., John D. Winner, Madison, Wis., for plaintiff-appellee.

William A. Marshall, Beverly W. Pattis-hall, Chicago, Ill., for amicus curiae.

Before TONE, BAUER and WOOD, Circuit Judges.

TONE, Circuit Judge.

This appeal presents the question whether a misspelled version of the word "light" can become a trademark for a "less filling, low-calorie beer." The District Court answered the question affirmatively and, based on that determination, granted a preliminary injunction, which this court has stayed pending appeal. We hold that, because "light" is a generic or common descriptive word when applied to beer, neither that word nor its phonetic equivalent may be appropriated as a trademark for beer. We therefore reverse the preliminary injunction order.

In May of 1967 a now defunct Chicago brewer, Meister Brau, Inc., began making and selling a reduced calorie, reduced carbohydrate beer under the name "LITE." Late in 1968 that company filed applications for registration of "LITE" as a trademark on the principal register in the United States Patent Office, which ultimately approved three registrations [1] on the principal register of labels containing the name "LITE" for "beer with no available carbohydrates." [2] Meister Brau continued producing and selling beer under the brand name "LITE" in the Chicago area during 1970 and 1971. In 1971 it changed the label used on cans and bottles to eliminate the words "Meister Brau," which had appeared above the word "LITE."

In 1972, with its demise imminent, Meister Brau sold its interest in the "LITE" trademarks, the registrations thereof, and the accompanying goodwill to the plaintiff Miller Brewing Company. For a time Miller continued selling beer under that brand in the Meister Brau marketing area in somewhat smaller quantities than Meister Brau had distributed.

Miller then decided to expand its marketing of beer under the brand "LITE." It developed a modified recipe, which resulted in a beer lower in calories than Miller's regular beer but not without available carbohydrates. The label was revised and one of the registrations was amended to show "LITE" printed rather than in script. [3] In addition, an extensive advertising campaign was undertaken. From 1973 through 1976, Miller expanded its annual sales of "LITE" from 50,000 barrels to 4,000,000 barrels and increased its annual advertising expenditures from $500,000 to more than $12,000,000. In support of its motion for a preliminary injunction in this case, Miller submitted the results of a survey which, as the District Court noted in its opinion and order, showed "that between December, 1975 and March, 1976, a substantial percentage of beer drinkers perceived LITE (43%), Miller LITE (11%), or LITE from or by Miller (1%) as a distinct brand name indicative of a low-calorie or less-filling beer."

Since early 1975 a number of other brewers have introduced reduced calorie beers labeled or described as "light." [4] One of these, although not the first, was the defendant G. Heileman Brewing Company, Inc., which began using the name on a beer low in calories but containing available carbohydrates in five test markets in 1976. Heileman had long been engaged in the production and sale of other brands of beer, among which were "Old Style" and "Special Export." The small print on the label

---

1. All three applications were filed in November 1970. The first, Registration No. 905,236, showing a label with only the word "LITE," written in script, was registered December 29, 1970. The second, Registration No. 929,276, showing the words "Meister Brau" in capital letters and underneath the word "LITE" in script similar to the first registration, was registered February 15, 1972. The third, Registration No. 929,277, showing only the word "LITE," written in script similar to that used in the other two registrations, was also registered February 15, 1972.

2. "Available" in this sense means "capable of being utilized by a[n] . . . animal." *Webster's Third New International Dictionary* 150 (1971).

3. Registration No. 929,277 was so amended in June 1975.

4. The beer industry apparently has refrained from describing any of its products as "low-calorie" since 1955, pursuant to the request of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. [Affidavit of James Van Santen, ⸗ 9 (Feb. 8, 1977).]

Heileman has used for many years for its "Old Style" beer describes that product as "light lager beer."

Miller began filing trademark infringement actions against competitors to enjoin the use of the word "light" at least as early as October 1975, but none of the cases has yet come to trial. Miller did not seek a preliminary injunction against any competitor until the filing of the instant action in November 1976. Two of the seven other brewers against whom actions are pending, Jos. Schlitz Brewing Co. and Peter Hand Brewing Company, have filed briefs *amici curiae* in this action.

On the basis of affidavits and other written material, the District Court in the case at bar enjoined Heileman from continuing to sell, advertise, and distribute beer "anywhere in the United States, under the brand name incorporating the word 'Light' in the manner of the label attached to the complaint herein . . . and under any colorable imitation of" the labels which had been registered with the Patent Office. This interlocutory appeal is taken from that order as later modified. The label used by Heileman at the time the injunction was entered featured the word "Light" in print much larger than the name "Heileman." As an alternative to its motion in the District Court to vacate the injunction order Heileman filed a declaration of intent to change its label to a form in which the name "Heileman" and the word "Light" appeared in the same size print and a motion for a determination that the new label would not be a "colorable imitation" of the registered labels. The District Court declined to decide the alternative motion, noting that Heileman apparently intended to proceed with the change in labels only if the court declared that the new label was not a colorable imitation of the registered trademarks. Heileman nevertheless proceeded to change its label to the new form and, after the appeal had been docketed, filed in this court a "notification of label change" reciting that, effective no later

than April 15, 1977, it "will have wholly abandoned use of the word 'Light' in the form of the [old] label."

### Mootness

■ Before reaching the merits, we must consider the effect of Heileman's formal abandonment of the old label. Assuming without deciding that this act deprived Heileman of standing to challenge the part of the injunction directed against that label or rendered moot any issue as to that label, the appeal is nevertheless not moot. The injunction also runs against "any colorable imitation" of three registered labels, two of which consist simply of the misspelled word "lite." This added proscription must be read in the context, first, of the prohibition against use of the old label, which was not a colorable imitation of the registered labels in any sense except its prominent use of the word "light," spelled correctly, and, second, of the district judge's memorandum and supplements thereto, which make it clear that he believed Miller would probably prevail on its claim to the exclusive use of the word "lite" and its phonetic equivalent on low-calorie beer. So read, we believe the colorable imitation clause is intended to enjoin the use of the word "light" in any prominent way on a label for low-calorie beer. Therefore, the case is not moot.

### The Effect of Registration

■ Miller claims the benefit of 15 U.S.C. § 1115(a), which provides that registration on the principal register

"shall be prima facie evidence of registrant's exclusive right to use the registered mark in commerce on the goods or services specified in the registration subject to any conditions or limitation stated therein . . . ."[5]

The three registrations on which Miller relies specify "beer with no available carbohydrates" as the goods on which the registered mark is to be used. This limitation came about because the Patent Office refused registration on the applications as

---

5. Miller does not argue that the mark is incontestable. It could acquire that status only through the filing of an affidavit in the Patent Office under 15 U.S.C. § 1065 (Supp. V 1975).

initially filed, which described the goods as "beer," on the ground that "LITE" was "merely descriptive" and therefore not registerable because of 15 U.S.C. § 1052(e)(1). In response to this action, Meister Brau offered evidence of secondary meaning, but in addition its attorney stated that "the beer in connection with which Applicant uses this mark is no-available carbohydrates beer . . ." and also had "one-third less calories than ordinary draft beer," and that "LITE" was suggestive rather than merely descriptive of these qualities. The examiner then required that the applications be amended to describe the goods to which the mark applied as "beer with no available carbohydrates" and they were so amended. We hold that the statute means what it says. The registrations are prima facie evidence of Miller's exclusive right to use the word "LITE" for beer with no available carbohydrates, not for any beer, a breadth of coverage which the applicant disclaimed by amending its applications. Inasmuch as the beer marketed by Heileman as its "Light" beer contains available carbohydrates, as indeed does Miller's "LITE," the registrations are not prima facie evidence of Miller's exclusive right to use the mark on that beer. Thus, although we think the result would be the same whether or not § 1115(a) applied, Miller's brand name "LITE" must be evaluated under the common law of trademarks without the benefit of registration.

### General Principles

■ The basic principles of trademark law which are applicable here have often been stated, *e. g., Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–11 (2d Cir. 1976); *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d 366, 378–379 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976), and may be briefly summarized. A term for which trademark protection is claimed will fit somewhere in the spectrum which ranges through (1) generic or common descriptive and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful. As the ease with which hues in the solar spectrum may be classified on the basis of perception will depend upon where they fall in that spectrum, so it is with a term on the trademark spectrum.

A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 68 L.Ed. 1161 (1924); *Henry Heide, Inc. v. George Ziegler Co.,* 354 F.2d 574, 576 (7th Cir. 1965); *CES Publishing Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11, 13 (2d Cir. 1975). Using the phonetic equivalent of a common descriptive word, *i. e.,* misspelling it, is of no avail. *American Aloe Corp. v. Aloe Creme Laboratories, Inc.,* 420 F.2d 1248, 1252–1253 (7th Cir.), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1820, 26 L.Ed.2d 91, 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970).

■ A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, *i. e.,* becoming "distinctive of the applicant's goods" (15 U.S.C. § 1052(f)), become a valid trademark. See *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 10.

A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be protected without proof of a secondary meaning. *Id.* at 11.

■ An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive. *Id.*

### Miller's Position

Although Miller argued in the District Court that "LITE" was suggestive, and persuaded the District Court that this was so with respect to the quality of being reduced in calories, it conceded in oral argument before us that the choice is between (1)

generic or common descriptive and (2) merely descriptive.[6] Miller argues that light beer is not a "genus," indeed that "light," as an adjective, cannot be a generic or common descriptive term, and that it is a merely descriptive term that has acquired a secondary meaning.

### An Adjective as a Generic Term

■ The fact that "light" is an adjective does not prevent it from being a generic or common descriptive word. See 1 J. T. McCarthy, *Trademarks and Unfair Competition* § 12:2 at 409 (1973); *Application of Preformed Line Products Co.,* 323 F.2d 1007, 51 CCPA 775 (1963); *Application of Helena Rubinstein, Inc.,* 410 F.2d 438 (Cust. & Pat.App.1969). See also 3 Callman, *The Law of Unfair Competition, Trademarks and Monopolies* §§ 70.4, 74.1 (3d ed. 1969), which Miller calls "the leading treatise." This must be the law, given the reason for the rule that precludes appropriation of a common descriptive word, *viz.,* otherwise "a competitor could not describe his goods as what they are." *CES Publishing Corp. v. St. Regis Publications, Inc., supra,* 531 F.2d at 13. Ordinarily, as here, the adjective which is sought to be appropriated in its generic sense[7] as a trademark will be a part of a name. See, *e. g., Roselux Chemical Co. v. Parsons Ammonia Co.,* 299 F.2d 855, 863, 49 CCPA 931 (1962) ("Sudsy" ammonia). If "light beer" is a generic name, then "light" is a generic word when used as part of that name.

**6.** In its brief it says that it does not matter whether the term is suggestive or merely descriptive because "either way it is susceptible of appropriation as a trademark for less filling, reduced calorie beers." On this record, this is probably correct, because even if the mark is merely descriptive there is enough evidence of secondary meaning to support the District Court's order. If it were suggestive, proof of secondary meaning would be unnecessary.

**7.** Of course a word that is generic when used in its ordinary sense can be classified at the other end of the spectrum, arbitrary or fanciful, if used in an arbitrary or fanciful sense. *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 10 (2d Cir. 1976).

### "Light" Is Generic

The record before us (although less complete than that in at least one of the other pending cases[8]) and facts of which we may take judicial notice, including generally accepted English usage, enable us to conclude that "light" is a generic or common descriptive term when used with "beer."

■ "Light" has been widely used in the beer industry for many years to describe a beer's color, flavor, body, or alcoholic content, or a combination of these or similar characteristics.[9] The use of that word by Heileman and other brewers long antedated either Miller's or Meister Brau's use of "LITE." The definition given in *Webster's Third New International Dictionary, supra,* at 1308, of "light" as an adjective includes the following:

"10 *of a beverage* a: having a comparatively low alcoholic content ([light] wines and beers) b: having a low concentration of flavoring congenerics: characterized by a relatively mild flavor: not heavy 11a: capable of being easily digested (a [light] soup) . . .."

The comparable definition in the previous, and for many the classic, edition of the same dictionary is as follows:

"3. . . . a Easy to be digested; not oppressive to the stomach; as, *light* food . . .."

.    .    .    .    .

"11. Of wines, beers, etc., not heavy or strong; having a relatively small percentage of alcohol."

**8.** So we are informed by Jos. Schlitz Brewing Co., defendant in that case, and *amicus curiae* here.

**9.** *E. g.,* cited by the Patent Examiner against Meister Brau's original applications for registration was Storz Brewing Company's registration (circa 1954), "America's Light Refreshing Beer." When Heileman sought to register "America's Great Light Beer," which it had used for its Blatz brand beer since 1970, the Patent Office required a disclaimer of "light beer" as a condition to granting registration.

*Webster's New International Dictionary* 1429 (2d ed. 1940). The definition of "pilsner" or "pilsener" in *Webster's Third New International Dictionary, supra,* at 1716, is:

"1 a : a light Bohemian beer with a strong hop flavor b : a beer of a similar type . . .."

Similar definitions and usage are found in reference works on chemical technology, industry publications, and magazines and newspapers generally. Indeed, state statutes even use "light beer" as a generic or common descriptive term.[10] "Light" is clearly a common descriptive word when used with beer.

"Light" is also a common descriptive word in other similar contexts. Miller's president testified in a deposition which has been made part of this record that Miller chose the word "LITE" for its low-calorie beer because of its desire to capitalize on the trend of "consumer products going lighter all over the world, be it foods, be it whiskeys, be it cigarettes," as well as to "convey the message that it would be lighter in taste" and to communicate "the conception of a less filling product." Miller's parent company, Philip Morris, Inc., registered "Light" (Registration No. 878,062) and used that word as a brand name for cigarettes (Marlboro Light). Judge Stewart held the word to be descriptive and ordered the registration cancelled in *Philip Morris, Inc. v. R. J. Reynolds Tobacco Co.,* 188 U.S.P.Q. 289 (S.D.N.Y.1975), a decision from which no appeal was taken. The word is also used by Pepsico, Inc. for "Pepsi Light" a soft drink described as having "half the calories out."

Miller argues that it uses the word as the name for "less filling , low calorie" beer, and that "light" has not heretofore been used in that sense. This argument fails for two reasons. First, "less filling" means es-

sentially light in body and taste and not oppressive to the stomach, which is a common descriptive meaning of "light"; and, as Miller conceded in its brief, the caloric content of beer depends primarily on alcoholic content.[11] Second, even if Miller had given its light beer a characteristic not found in other light beers, it could not acquire the exclusive right to use the common descriptive word "light" as a trademark for that beer. Other brewers whose beers have qualities that make them "light" as that word has commonly been used remain free to call their beer "light." Otherwise a manufacturer could remove a common descriptive word from the public domain by investing his goods with an additional quality, thus gaining the exclusive right to call his wine "rosé," his whiskey "blended," or his bread "white."

The word "light," including its phonetic equivalent "lite," being a generic or common descriptive term as applied to beer, could not be exclusively appropriated by Miller as a trademark, "despite whatever promotional effort [Miller] may have expended to exploit it." *Henry Heide, Inc. v. George Ziegler Co., supra,* 354 F.2d at 576; see *Abercrombie & Fitch Co. v. Hunting World, Inc., supra,* 537 F.2d at 9–10. Because probability of success cannot be established, other issues argued by the parties need not be decided, and the preliminary injunction must be reversed.

REVERSED.

---

10. 37 Okla.Stats. § 506(12), (13) (1951); Utah Stats. §§ 32–4–10, 32–4–14 through 32–4–17 (1953). The word "light" is also used to describe wine with a low alcohol content. 1947 Ark.Stats. § 48–503; D.C.Code § 25–103(c), 25–111, as amended (1977); La.Rev.Stats. § 26:71.1 (1975); 1957 Ann.Code of Md., Article 2B, §§ 2(c), 3, 12A, 13 through 16, as amended (1976); 1972 Ann.Code of Mississippi §§ 67–3–1, 67–3–5, 67–3–13.

11. Miller attempted at oral argument to qualify this concession, Heileman having pointed out in its reply brief that "low in calories" adds nothing to "low in alcoholic content." In any event, we can take judicial notice that alcoholic and caloric content go hand in hand.