**BODEN PRODUCTS, INC., Plaintiff,**

v.

**DORIC FOODS CORPORATION, Defendant.**

No. 81 C 1373.

United States District Court, N.D. Illinois, E.D.

June 9, 1982.

Thomas S. Scavone, Barry W. Sufrin, Hosier, Niro & Daledein, Ltd., Chicago, Ill., for plaintiff.

Jonathan Vegosen, Vance L. Liebman, Wilson P. Funkhouser, Lawrence R. Levin, Levin & Funkhouser, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

In this case we are called upon to judge the validity of the term "Florida Citrus Punch" as a trademark. Plaintiff, Boden Products, Inc. ("Boden") seeks a declaratory judgment and injunction against defendant Doric Foods Corp. ("Doric") to prevent defendant from acting on its threat to sue Boden for infringement of defendant's trademark. Complaint Ex. M.

Boden is the seller of "Boden's" Florida Citrus Punch and "Boden's Orchard" Florida Citrus Punch. Complaint Exs. E1, E2; Plaintiff's Memorandum in Support of Summary Judgment ("Plaintiff's Memo") at Exs. A, B. Doric is the seller of "Sunny Delight Florida Citrus Punch", "Tip Top Florida Citrus Punch", and "Florida Citrus Punch." Complaint Exs. F, G, H, I, and J. Doric obtained a trademark on the term Florida Citrus Punch on March 11, 1980. Plaintiff's Memo at Ex. D. Doric originally applied for a trademark in early 1976 but the Patent and Trademark Office declined to grant trademark protection to the phrase, holding that as submitted the term Florida was confusingly similar to other registered marks and Citrus Punch was merely an apt name for the goods. Plaintiff's Supplemental Ex. G, Ruling of July 23, 1976.[1] Doric contested the rejection but on reconsideration the application was again denied. The examiner at the Patent and Trademark Office repeated his conclusion that Florida Citrus Punch was merely descriptive and held there was insufficient evidence to establish a secondary meaning. *Id.*, Ruling of July 22, 1977. Following this second refusal Doric submitted a lengthy

1. Both parties submitted a number of exhibits for consideration. Exhibit G of Plaintiff's Memorandum contained an incomplete copy of the Patent and Trademark Office file concerning Doric's attempts to register the mark at issue. Upon consideration we determined that it would not be possible to adequately rule on this motion without more complete information and therefore requested the parties to submit the remainder of the file referred to in plaintiff's Ex. G. We cite to the file as submitted pursuant to this request by the court as Plaintiff's Supplemental Ex. G, followed the title of the particular document referred to.

affidavit and amendment disclaiming any claim to the term Citrus Punch alone and demonstrating substantial sales volume and advertising expense promoting the product. *Id.,* Affidavit of Robert E. Miller, Jan. 23, 1978. In response to the amendment the Patent and Trademark Office withdrew the refusal to register the mark pending receipt of consumer letters indicating the mark had become distinctive to Doric's product. *Id.,* Ruling of Jan. 19, 1979. Following receipt of two groups of letters from consumers furnished by Doric the examiner approved the trademark "under section 2(f)", *id.* at 1, indicating that the mark had become distinctive of defendant's goods.

Boden has moved for summary judgment, contending that Florida Citrus Punch is a "generic" term and therefore not subject to trademark protection under the Lanham Act, 15 U.S.C. §§ 1051–1127 (1976).

Trademark law recognizes four categories of terms applied to goods: (1) generic or common descriptive; (2) merely descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Miller Brewing Co. v. G. Heileman Co.,* 561 F.2d 75, 79 (7th Cir.1977). Terms which fall into the first category are those "commonly used as the name or description of a kind of goods", *id.* at 79, "and cannot become a trademark under any circumstances." *Id. See also Reese Publishing Co. v. Hampton International Comm.,* 620 F.2d 7, 12 (2d Cir.1980); *S.S. Kresge v. United Factory Outlet,* 598 F.2d 694, 696–97 (1st Cir.1979); *CES Publishing Co. v. St. Regis Publishing Co.,* 531 F.2d 11, 15 (2d Cir.1975). Merely descriptive terms, by contrast, "describe a characteristic or ingredient of an article" and can by acquiring a secondary meaning become a valid trademark. *Miller Brewing Co., v. G. Heileman Brewing Co.,* 561 F.2d at 79. *See* 15 U.S.C. § 1052(f). A generic term cannot acquire secondary meaning and thus evidence of consumer recognition and other traditional indicia of distinctiveness need not be considered. *See Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366 (1st Cir. 1980); *Reese Pub. Co. v. Hampton International Comm.,* 620 F.2d at 10–12; *CES Pub. Co. v. St. Regis Pub. Co.,* 531 F.2d at 15. The decision whether a product name is generic or merely descriptive is a question of fact.

The determination whether a mark is generic or merely descriptive is often a difficult one and courts have frequently exhibited confusion in the use of terminology. *See e.g. Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d at 376 & n. 9 (holding mark "export soda" for crackers generic but directing district court to consider evidence of secondary meaning); *Surgicenters of America v. Medical Dental Surgeries,* 601 F.2d 1011, 1015–16 (9th Cir.1979) (general discussion of misuse of terminology). Two of the better attempts to explain the difference, both in characterization and effect, between generic and merely descriptive marks are set out below:

> A generic term is one that refers, or has come to be understood as referring, to the genus of which the particular product is a species. At common law neither those terms which were generic nor those which were merely descriptive could become valid trademarks [citation omitted].... While, ... the Lanham Act makes an important exception with respect to those merely descriptive terms which have acquired secondary meaning, see § 2(f), 15 U.S.C. § 1052(f), it offers no such exception for generic marks.... This means that even proof of secondary meaning, by virtue of which some "merely descriptive" marks may be registered, cannot transform a generic term into a subject for trademark.... [N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name.

*Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976).

The distinction between a mark which is the "common descriptive name" of the goods and/or service in question and one which is "merely descriptive" of them is well established.

"Generic terms, those which are the *common descriptive name* of an article or substance, can never be registered or entitled to trademark protection. *Merely descriptive* terms are not accorded protection either unless they have become distinctive or have acquired secondary meaning. *Antimonopoly, Inc. v. General Mills Fun Group, Inc.,* 195 U.S.P.Q. 634 (N.D.Cal.1977)."

\* \* \* \* \* \*

The classic standard applied to determine whether a term is generic is whether its principal significance to the public is as the name of an article or service or as an indicia of source for that article or services. If the former, the mark is generic; if the later, it is not. *Council of Better Business Bureaus v. Better Business Bureau,* 200 U.S.P.Q. 282, 290 (S.D.Fla.1978) (emphasis original).

The issue presented here is whether Florida Citrus Punch is generic, and thus not subject to trademark protection under any circumstances, or merely descriptive, and if the latter, whether there is a material question of fact on the issue of secondary meaning so as to make summary judgment inappropriate.

Boden makes much of the fact that Doric has disclaimed, as the Trademark Office required, any trademark protection in the phrase "citrus punch." [2] In communication with Boden, Doric indicated that it had no objection to Boden's designation of its product as citrus punch.[3] Moreover, were we required to do so, it is appropriate to take judicial notice of the meaning of words and we have little doubt that the Trademark Office was correct in not permitting any one party to establish a monopoly on the description of a beverage containing a combination of different citrus fruit juices as a "citrus punch." [4] *See Miller Brewing Co.,* 561 F.2d at 80 (relying on dictionary definition of "light" as applied to alcoholic bever-

ages in holding light beer generic); *S.S. Kresge v. United Factory Outlet,* 598 F.2d at 696 (relying on dictionary definition of the term "mart" as applied to general retail stores).

But the unremarkable concession by Doric that citrus punch is generic is of little or no help to plaintiff in arguing that Florida Citrus Punch is a common descriptive as opposed to merely descriptive term. There is a whole body of case law dealing with whether geographic terms, when applied to otherwise generic phrases, can benefit from trademark protection. *See* 1 J. Gilson, Trademark Protection and Practice § 2.07 (1979). In some cases geographic designation may be suggestive and thus protectable even without proof of secondary meaning, *see In re RJR Foods, Inc.,* 189 U.S.P.Q. 622, 623–24 (TMT & App.Bd.1976) (holding "Hawaiian Maid" suggestive for frozen concentrate drink mix); *Plough, Inc. v. Florida Tan Products,* 174 U.S.P.Q. 46, 47–48 (TMT & App.Bd.1972) (holding "Florida Tan" suggestive for suntan lotion), or they may be descriptive and subject to proof of secondary meaning, *see Community of Roquefort v. William Faehndrich, Inc.,* 303 F.2d 494, 496–97 (2d Cir.1962); *Kentucky Fried Chicken Corp. v. Smith,* 351 F.Supp. 1311, 175 U.S.P.Q. 154 (E.D.Mich.1972), or they may themselves designate a type of product and therefore not subject to registration, *see* J. Gilson, *supra* § 2.07 at 2–47 n. 4. *See generally id.* § 2.07.

Prior to the Lanham Act geographically descriptive marks were treated the same as generic marks and, while a manufacturer of a product could maintain unfair competition or fraud claims, he could not benefit from the protection of a trademark regardless of secondary meaning. *See Elgin National Watch Co. v. Illinois Watch Case Co.,* 179 U.S. 665, 673–78, 21 S.Ct. 270, 273–275, 45 L.Ed. 365 (1901). Section 2 of the Lanham

---

**2.** The disclaimer appears on the face of Doric's trademark as listed in the Principal Register. *See* Complaint, Ex. L.

**3.** *See* Complaint, Ex. M.

**4.** The dictionary definition of "punch" is, inter alia, "a beverage composed of fruit juices and other non-alcoholic liquids (as tea, ginger ale) and usually served cold." *Webster's Third International Dictionary* at 1842 (1961).

Act, however, "recognizes the principle that geographically descriptive terms which attain secondary meaning are entitled to legal protection and federal registration." J. Gilson, *supra* § 2.07 at 2–47.[5] Section 2(e) denies registration where the mark "when applied to the goods of the applicant is primarily geographically descriptive or deceptively misdescriptive of them", *unless* "the registration of a mark used by the applicant [ ] has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(e)(2), (f).

There may be some products where the geographic label has lost its meaning entirely and represents a type of product and is thus generic. As one commentator points out, it is questionable whether the consuming public perceives "Swiss Cheese" as cheese from Switzerland or merely a generic type of cheese. The same may be said for chablis applied to white wine and burgundy applied to red. *See J. Gilson, supra* § 2.07 at 2–52 n. 28. *See also Scotch Whisky Ass'n v. Barton Distilling Co.,* 489 F.2d 809 (7th Cir.1973) (holding label of Scotch misdescriptive when applied to whiskey made in Panama without discussion of whether "Scotch Whisky" is a generic type of liquor); *Health Industries v. European Health Spas,* 489 F.Supp. 860, 867 (D.S.D. 1980) (adding to the list above French fried potatoes and Danish pastry).[6]

But the vast majority of geographic designations fall into the "primarily geographically descriptive" category. This is particularly true where the geographic area is a well known source for the product in question:

> If the particular class of product is widely noted as originating in one region, country or area, a geographic term applied to such a product is likely to be regarded as primarily geographically descriptive. Thus SWISS for watches, PARIS for perfumes, FRENCH for wines, and HAWAIIAN for pineapples would undoubtedly be regarded as geographically descriptive terms.

J. Gilson, *supra* § 2.07 at 2–52. *See also Saratoga Vichy Spring Co., Inc. v. Lehman,* 491 F.Supp. 141, 149–53 (N.D.N.Y.1979).

■ To that list we can safely add Florida for citrus fruit and products. The State of Florida has a strong association with citrus fruit which both the State and the citrus fruit growers protect and promote.[7] There is no doubt that Florida when applied to citrus punch at least in part suggests the

---

**5.** Boden attempts, without benefit of evidence, to fit the mark in this case into the category of "French fried potatoes", "Brussels sprouts", "English horns", and "Worcestershire sauce". *See* Plaintiff's Reply Brief at 5–6. The argument fails for several reasons. In the first place, Boden has failed to identify a single product other than the two involved in this litigation which describes itself as "Florida citrus punch" or even citrus punch from Florida. There is much evidence of other products which contain the geographic designation Florida, including orange juice and grapefruit juice, *see* Reply Memorandum, Ex. 14, but that is irrelevant in deciding whether Doric's mark is generic.

In the second place, even if the issue here is whether "Florida Citrus" is generic, which is not the issue, it is apparent that the term falls into a different category than the examples cited above. The items which Boden cites are generic, if at all, because they have *lost* their geographic meaning and have come to stand for a type of product regardless of where it comes from, i.e., no one really thinks "French fried potatoes" come from France or that "English horns" are made in England. The very evidence submitted by Boden establishes that people *do* think Florida citrus comes from Florida, and in fact the State of Florida and Florida growers go to great lengths to assure consumers that their expectations are met. *See* n. 7 *infra.* Boden apparently confuses the distinction between generic terms and those that are geographically descriptive and thus, while not protectable on their face, can become trademarks upon proof of secondary meaning. In short, there is no justification either in the evidence presented or otherwise for concluding that Florida Citrus Punch is a generic phrase.

**6.** In the *Saratoga* case the plaintiff was attempting to claim a monopoly on the use of the word Saratoga as applied to *any* mineral water product, regardless of the remainder of the title. The equivalent here would be if Doric was attempting to prohibit Boden from using the word Florida as a designation on its citrus drink, regardless of the remainder of the identification. Doric has not taken that position.

**7.** *See* Plaintiff's Reply Memorandum at Exs. 6, 7, and 8.

geographic origin of the product. That does not, however, foreclose Doric from establishing secondary meaning; it simply makes its job more difficult. *See Saratoga Vichy Spring Co., Inc. v. Lehman,* 491 F.Supp. at 149–50.

■ The issue of whether a mark has become distinctive as representing a particular company's goods is a question of fact. *Union Carbide Corp. v. Ever-Ready Inc.,* 531 F.2d 366, 380–81 (7th Cir.), *cert. denied,* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). The burden of establishing that the mark has become distinctive is a heavy one where the type of product is generally associated with the geographic area; the party claiming the trademark must demonstrate that the mark denotes "a single thing coming from a single source." *Aloe Creme Lab., Inc. v. Milsan, Inc.,* 423 F.2d 845, 849 (5th Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1818, 26 L.Ed.2d 90 (1970) (quoting *Coca-Cola Co. v. Koke Co.,* 254 U.S. 143, 41 S.Ct. 113, 65 L.Ed. 189 (1920)). In the instant case Doric, in resisting Boden's motion for summary judgment, need not convince us that Florida Citrus Punch has attained a secondary meaning in commerce; it need only raise a genuine factual dispute on the issue. Fed.R.Civ.P. 56(d).

■ A party seeking to establish secondary meaning may rely on direct evidence of consumer recognition or indirect evidence consisting of sales volume, advertising expenses and other indicia of recognition and promotion of the product in commerce. *Union Carbide Corp. v. Ever-Ready, Inc.,* 531 F.2d at 366. In addition, "where the [holder of the mark] has a finding of distinctiveness under section 2(f) from the Patent Office, he is entitled to a presumption that the mark has attained secondary meaning." J. Gilson, *supra* § 2.09 at 2–74 & n. 27; *but see Homemakers Home and Health Care Service, Inc. v. Chicago Home for the Friendless,* 484 F.2d 625 (7th Cir. 1973) (no presumption applies where registration was permitted on merely descriptive term without a finding under § 2(f)).

■ In the case at bar Doric meets its burden of raising an issue of fact on secondary meaning merely by relying on the finding made by the Patent and Trademark Office. It is clear from the history of Doric's attempt to register Florida Citrus Punch that the hearing examiner believed the term to be geographically descriptive and only permitted registration upon proof of secondary meaning.[8] The ultimate approval issued in March, 1980 was specifically based on a finding of distinctiveness under § 2(f). Moreover the affidavits submitted by Doric state that 300,000,000 containers of Florida Citrus Punch were sold roughly between 1967 and 1976 and substantial money was expended promoting the product.[9] While these facts are not dispositive and can be refuted by evidence of consumer non-recognition, Boden has submitted no such evidence. Much like the plaintiff in *Saratoga Vichy Spring Co.,* (who was seeking protection for its mark), Boden has relied almost exclusively upon conclusory allegations that the consuming public must believe Florida Citrus Punch is without secondary meaning because of the association between the State of Florida and citrus. While there may be some appeal to plaintiff's common sense approach,[10]

---

**8.** *See* Plaintiff's Supplemental Ex. G.

**9.** Boden claims in its reply brief that the evidence of advertising and sales volume applies to products labeled "Sunny Delight—Florida Citrus Punch" and therefore is not applicable on the issue of secondary meaning for the mark "Florida Citrus Punch." The evidence of how Doric promotes its products, and indeed what they are called, is not at all clear. At least some of the advertising presented as evidence promotes "Florida Citrus Punch" without any other product title. *See* Complaint Exs. F–J. In any case, the ultimate question of whether consumers understand the mark to designate a product originating from a single source is a question of fact. We agree with Boden that where the mark is accompanied by another registered trademark phrase, evidence of sales and advertising revenues is far less persuasive than if the mark was the single product name. Nevertheless, because there are genuine issues of fact in dispute, summary judgment is inappropriate.

**10.** Another common sense approach might be for Boden to call its product a Florida Citrus Drink or a Citrus Punch from Florida. *See* J.

conclusory allegations are no substitute for evidence on a motion for summary judgment.

Accordingly, plaintiff's motion for summary judgment is denied.

Gilson, *supra* § 2.07 at 2–49 (footnotes omitted):

> Even though one business has established secondary meaning rights in a geographically descriptive term, other businesses may still inform the public that their goods are made in the same locale. Section 33(b) sets forth the "fair use" defense and permits a defendant in an infringement action to make non-trademark use of a term "which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin." Thus, he may advertise that his men's slacks are "made in Nashville, Tennessee," if they are, but he may not sell them as "NASH-VILLE brand slacks" where such a use could violate the prior rights of another and result in the likelihood of confusion.

*See* 15 U.S.C. § 1115(b)(4). This assumes, and we realize the fact is in dispute, that plaintiff's punch actually contains the requisite amount of Florida citrus juice.