SPIROL INTERNATIONAL CORP. and
C.E.M. Co., Inc., Plaintiffs,

v.

VOGELSANG
CORPORATION, Defendant.

Civ. A. No. 86–3708.

United States District Court,
D. New Jersey.

Nov. 3, 1986.

Arthur R. Schmauder, Shanley & Fisher, P.C., Morristown, N.J., for plaintiffs.

Jeffrey L. Miller, Roselle Park, N.J., R. Gale Rhodes, Jr., Evans, Osborne, Kreizman & Welch, Red Bank, N.J., for defendant.

## OPINION

COWEN, District Judge.

### I. INTRODUCTION

Plaintiffs, Spirol International Corp. and C.E.M. Co., Inc., come before this Court asking for injunctive and other relief against defendant, Vogelsang Corporation, preventing defendant from infringing on their trademarks and engaging in unfair competition. I will deny the preliminary injunction because I am not satisfied that the plaintiffs have met their burden in showing that they are entitled to injunctive relief.

### II. FACTS

The plaintiffs, manufacturers of fasteners and assembly equipment and machinery, have a trademark on the word "SPIROL." This term is used in the name of one of the corporate plaintiffs and is used in plaintiffs' advertisements to preface many of the products they sell. Most sig-

nificantly, at least in the context of this litigation, the plaintiffs use the term to describe one of the mechanical fastening pins they manufacture, which is spiral-shaped. The plaintiffs had a patent on the manufacturing process for this pin, which has now expired. This patent allowed the plaintiffs to enjoy a monopoly in this country for the manufacture of these pins, and the plaintiffs continue to retain a market share of upwards of 99% for this product.

The defendant, also a manufacturer of fasteners and other similar products and a United States subsidiary of a German competitor of the plaintiffs around the world, has now attempted to manufacture this spiral-shaped pin and thereby capture some of the plaintiffs' market share in this country. To that end, the defendant has advertised in several trade magazines, including some in which the plaintiffs also advertise, calling its product a "COILED SPIRAL PIN."

Both parties sell their goods primarily, if not exclusively, to original equipment manufacturers (O.E.M.s), e.g., Ford Motor Corp., General Motors Corp., various aerospace and defense contractors, etc.

The plaintiff argues that the proper and generic name for the product is a "COILED SPRING PIN," the defendant argues that it calls the product what it is; a "SPIRAL PIN," and this is what those purchasing the product normally would call it. Nonetheless, the plaintiffs have alleged that the defendant's use of the word "SPIRAL" in connection with a product they manufacture infringes on their trademark "SPIROL" and their mechanical fastener of the same name, and that this use allows defendant to unlawfully trade on the goodwill and reputation of the plaintiffs.

The plaintiffs seek an injunction preventing the defendant's further use of this term in connection with this product, compensatory and treble damages, disgorgement of profits for the defendant's use of this trademark, costs and attorneys fees, and the return and destruction of all literature bearing the allegedly infringing terms.

## III. DISCUSSION

Injunctive relief is not automatically granted; the party seeking an injunction must show that it is entitled to this remedy. Injunctive relief may be granted in the discretion of the court "if the moving party demonstrates both a reasonable probability of eventual success in the litigation and that the party 'will be irreparably injured *pendente lite* if relief is not granted'." *Kershner v. Mazurkiewicz,* 670 F.2d 440, 443 (3d Cir.1982), citing *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.,* 630 F.2d 120, 136 (3d Cir.), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). The court may also consider the possible harm to other interested persons or to the public interest. *Kershner,* 670 F.2d at 443.

Whatever factors are considered, the decision to grant or deny the injunctive relief is within the sound discretion of the judge, "who must balance all of these factors in making a decision." *Id.*

In considering whether or not to issue an injunction, it has been stated on at least one occasion "to doubt is to deny." *Graham v. Triangle Publications, Inc.,* 233 F.Supp. 825, 829 (E.D.Pa.1964), *aff'd,* 344 F.2d 775 (3d Cir.1965), citing *Madison Square Garden Corp. v. Braddock,* 90 F.2d 924, 927 (3d Cir.1937). I, like Judge Higginbotham in *Graham,* "have doubt in this case." *Graham,* 233 F.Supp. at 829. I do not think that the plaintiffs have made a satisfactory showing that they are entitled to injunctive relief.

### A. Likelihood of Success

The plaintiffs argue that they will likely succeed. I disagree. In order for the plaintiffs to succeed on their cause of action under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.,* otherwise known as the Lanham Act, they must show that they have a valid trademark, are entitled to exclusive use thereof, and that the defendant's use of that mark is an infringement.

"The purpose of a trademark is to designate the source of a product." *Technical*

*Pub. Co. v. Lebhar-Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984). Trademarks are classified as to their ability to effectively accomplish this task, *id.; see also Miller Brewing Co. v. Heileman Brewing Co.,* 561 F.2d 75, 79 (7th Cir.1977), *cert. denied,* 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978); *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976), and fall into four categories: 1) generic or common descriptive; 2) merely descriptive; 3) suggestive; and 4) arbitrary or fanciful. *See, e.g., Miller Brewing,* 561 F.2d at 79. Under these facts, the mark here must fall into the first or second category.

### 1. Generic

If a mark is determined to be generic, the law is clear: "A generic or common descriptive is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances. Using the phonetic equivalent of a common descriptive word, i.e., misspelling it, is of no avail." *Id.* (citations omitted). The reason behind this policy is obvious: "To allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately. Thus, even when a generic term has developed a secondary meaning it is unprotectable as a trademark." *Technical,* 729 F.2d at 1139.

■ I believe that there is sufficient evidence to establish that the term "SPIRAL PIN" could be deemed the generic name for the good in question. If the term is generic, the plaintiffs cannot have a valid trademark and will not prevail on their cause of action.

### 2. Descriptive

If the mark is found to be "merely descriptive" it will be protectable "only ... if the proponent of the mark can establish

that the mark has developed a secondary meaning linking the product with its source in the mind of the consuming public." *Technical,* 729 F.2d at 1139; *see also Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1228 (3d Cir.1978). Ordinarily, the plaintiff must assume the burden to show that a mark has attained secondary meaning.

■ The plaintiffs, however, argue that their mark, even if merely descriptive, has now become incontestible and cite *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1984), as support for their position. Even assuming, arguendo, that their mark is incontestible, I think that the defendant's use can be upheld under section 1115(b)(4), if the defendant can show fair use of the term as descriptive of its product. At this point I believe that the defendant can and will make such a showing, even though they would have the burden of proof. *See Salton v. Cornwall Corp.,* 477 F.Supp. 975 (D.N.J.1979).

In conclusion, it is far from clear that the plaintiffs have a valid trademark. Even if the Court were to determine that the plaintiffs have a valid or incontestable mark, the defendant's fair use of the term "SPIRAL PIN" could be upheld on the basis of section 1115(b)(4).[1] At this point in the litigation, I cannot say that the plaintiffs' will likely prevail on their cause of action; on the contrary I do not think they will.

### B. Irreparable Injury

Notwithstanding the fact that I do not think the plaintiffs will eventually prevail on their cause of action, I also fail to find any irreparable harm coming to the plaintiffs if this injunction does not issue.

■ The plaintiffs argue that the defendant's use of the term "SPIRAL" and the nature of the defendant's advertising will confuse consumers. This argument is

---

**1.** There is also some suggestion that the plaintiffs obtained their trademark through fraudulent conduct. This would void the trademark under section 1115(b)(1). The Court need not reach this argument at this time, as there are other sufficient grounds on which to deny the injunction.

far-fetched. It seems unlikely that the obviously sophisticated buyers of this product would be confused; the product is not sold to ordinary consumers. The unlikelihood of confusion seems especially true here, where the market until this year could only obtain this product from one source, the plaintiffs. Sophisticated buyers surely would know that they are not purchasing from the same source they had utilized in the past. Moreover, in comparing the defendant's advertisements with those of the plaintiffs, it is clear that they differ, and the defendant prominently displays its company logo. Thus, I do not believe that confusion would result from the defendant's use of the term "SPIRAL" in the context of its present advertisements.

The likelihood of the plaintiff's harm seems less than compelling since the plaintiffs have a virtual monopoly (99%) on the manufacturing and sale of this product in this country. In fact, the equities seem to fall in favor of the defendants, since this injunction, if issued, would in effect prevent the defendant from advertising and would perpetuate the plaintiffs' already overwhelming market share, at least in the short term.

### C. The Public Interest and Harm to Third Parties

I believe that the public interest in this case weighs in favor of promoting competition and competitive prices, and there being no confusion, I find that the public interest favors denial.

I also find that there would be no harm to third parties if the injunction should not issue, but that harm would result to the marketplace if the defendant's efforts to compete are curtailed by the issuance of this injunction.

### IV. CONCLUSION

I find that the plaintiffs have not demonstrated a likelihood of success on the merits. I also find, however, that the plaintiffs have failed to show irreparable harm if this injunction should not issue. The public interest and the possible harm to the marketplace also counsel in favor of denial. Since the plaintiffs cannot meet the standard as set forth in *Kershner*, the plaintiffs' motion for a preliminary injunction will be denied.