Pond v. Majercik                    CV-94-225-M    09/29/95
            UNITED STATES DISTRICT COURT FOR THE

                  DISTRICT OF NEW HAMPSHIRE


Patricia Pond, Individually and as
Administratrix of the Estate of Scott Pond,
      Plaintiff,

      v.                                    Civil No. 94-225-M

Donald A. Majercik, and Parker Aviation
Enterprises, Inc., Defendants, and
John McGrath, Executor of the
Estate of Mary Jane McGrath,
      Defendant and Third Party Plaintiff,

      v.

Nathan Pond, Gary Pond, William
Batesole, James Parker, Jr.,
Lebanon Riverside Rotary, an
Unincorporated Association, and
the United States of America,
      Third Party Defendants.


                        O R D E R


      This suit arises from a fatal midair collision between an

aircraft piloted by Mary Jane McGrath and a parachutist, Scott

Pond, during an air show in Lebanon, New Hampshire.  Plaintiff

Patricia Pond sued the Estate of Mary Jane McGrath, both

individually and on behalf of her husband Scott's estate.  John

McGrath, executor of his wife's estate, in turn filed a third

party negligence claim against the United States of America,

Federal Aviation Administration (FAA), under the Federal Tort

Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80.  Before the

court is the government's motion to dismiss the third party

claim, Fed. R. Civ. P. 12 (b)(1), on grounds that the

discretionary function exception to the FTCA's general waiver of sovereign immunity deprives the court of subject matter jurisdiction over the McGrath Estate's negligence claim. See FTCA, 28 U.S.C. § 2680(a). The court agrees, and for the reasons discussed below, the government's motion is granted.

## I.  BACKGROUND

On July 6, 1993, Parker Aviation ("Parker"), in conjunction with the Lebanon Riverside Rotary Club ("Rotary"), obtained a Certificate of Waiver ("Waiver") from the FAA authorizing specific deviations from otherwise applicable Federal Aviation Regulations ("FARS") governing air traffic operations. The Waiver permitted Parker to conduct an air show at the Lebanon Municipal Airport from July 23 through 25, 1993. Under the Waiver, activities that would normally be prohibited, such as aerobatics below 1500 feet and parachute jumps over an open assembly of spectators, were allowed. As holders of the Waiver, Parker and the Rotary were responsible for compliance with its terms and for the overall safety of the event. The FAA, following its usual practice, assigned an inspector, Robert Dziazio ("Dziazio"), to monitor compliance with the Waiver's terms and address general air safety concerns.

Mary Jane McGrath ("McGrath"), a biplane pilot, and the Pond Family Skydivers were hired to perform at the air show. On July 24, 1993, the opening day of the air show, a program was distributed highlighting the days' upcoming acts. The program disclosed that Nate and Gary Pond, of the Pond Family Skydivers, would perform a "flag jump" to open the air show. According to the program description, Nate and Gary would jump from the same airplane, link up, deploy their parachutes, and then release an American flag which would trail out behind them.

On the morning of the opening day, Parker held a pre-show briefing for all air show participants, as required by the provisions of the Waiver. Among those in attendance were FAA inspector Dziazio, McGrath, and Nate Pond (representing the Pond Family Skydivers). However, neither Gary Pond, Scott Pond (a Pond Family Skydiver not mentioned in the program), nor William Batesole (the Pond's jump plane pilot) attended.[1] During the briefing, Parker discussed the various acts listed in the program. For the first time, Parker disclosed that the Pond Skydivers would be circled by two biplanes (one piloted by

---

[1] The previous day Gary Pond (representing the Pond Family Skydivers) signed an "Air Show Waiver Review" form, confirming that he had read and would comply with all provisions of the Waiver. (McGrath's complaint at ¶ 35.)

McGrath) as they descended. That aspect of the performance was not disclosed in the program. Parker then deferred to Nate Pond, who described the act in greater detail.

The briefing concluded, and the first act began as scheduled at approximately 12:45 p.m. The Ponds' jump plane took off, followed by the two biplanes. Upon reaching the planned altitude, Nate and Gary Pond jumped from their plane and deployed their parachutes. The first biplane flew towards Nate and Gary Pond and began circling them as they descended. McGrath, piloting the second biplane, followed immediately behind. As McGrath began her approach, a third skydiver, Scott Pond, jumped from the Ponds' jump plane. McGrath's biplane and Scott Pond collided in midair; both McGrath and Pond died.

The McGrath Estate claims that only Nate and Gary Pond were expected to jump and that the Ponds changed the act without informing Mary Jane McGrath. The McGrath estate also alleges that FAA personnel were negligent both in issuing the Waiver[2] and in failing to enforce compliance with its terms. Specifically,

_____

[2] In its third party complaint against the United States, the McGrath Estate did not claim that the United States was negligent in issuing the Waiver. Rather, the Estate only claimed government negligence in monitoring compliance with the terms of the Waiver. The claim of negligence in the issuance of the Waiver was raised for the first time in the McGrath Estate's opposition to the United States' motion to dismiss.

4

the estate asserts that FAA personnel:  1) failed to require Parker to list the names of and licenses held by every air show performer in its application for the Waiver; and 2) failed to enforce the terms of the Waiver and stop the airshow when certain terms were not met.  The estate seeks to recover damages against the United States for the wrongful death of McGrath, and it seeks contribution from the United States should the McGrath Estate be held liable on claims made against it by the Pond Estate.  See 28 U.S.C. §§ 1346(b), 2671-80; Fed. R. Civ. P. 14 and 18.

The government counters that under the "discretionary function" exception to the FTCA's sovereign immunity waiver, 28 U.S.C. § 2680(a), this court lacks subject matter jurisdiction over the claim.  As to the wrongful death action, the government argues that because third party plaintiff failed to exhaust its administrative remedies against the United States this court also lacks jurisdiction over that claim.

## II.  STANDARD OF REVIEW

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12 (b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists."  Stone v. Dartmouth College, 682

5

F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982); C. Wright & A. Miller, 5 Federal Practice and Procedure § 1350, at 555 (1969 & Supp. 1987)).  Furthermore, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment."  Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987); see also  Richmond, F & P R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) cert. denied, 503 U.S. 984 (1992); see also Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  But, the court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Richmond, 945 F.2d at 768 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).  "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  Id. (citing Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987)).

In this case, both the government and third party plaintiffs have attached affidavits and exhibits to their motions, and the court has considered them in ruling on those motions.

## III.  DISCUSSION

The FTCA, 28 U.S.C. § 1346(b), waives the federal government's sovereign immunity relative to certain claims sounding in tort.  The FTCA waiver is, however, subject to various exceptions, one of which is the "discretionary function exception."  28 U.S.C. § 2680(a).  Under that exception, the government is not liable on:

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).[3]  Cases falling within the reach of the discretionary function exception must be dismissed for lack of

---

[3]  The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  Irving v. United States, 909 F.2d 598, 600 (1st Cir. 1990) (citing United States v. S.A. Empresa de Viacai Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).

7

subject matter jurisdiction.  <u>Attallah v. United States</u>, 955 F.2d 776, 783 (1st Cir. 1992).

The Supreme Court fashioned a two-part test to be used in determining whether the discretionary function exception bars a particular suit against the government.  <u>See</u> <u>United States v. Gaubert</u>, 499 U.S. 315 (1991); <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988).  First, the exception applies only to acts or omissions that are discretionary in nature, acts that "`involv[e] an element of judgment or choice.'"  <u>Gaubert</u>, 499 U.S. at 322 (quoting <u>Berkovitz</u>, 486 U.S. at 536).  Second, assuming the challenged conduct involves an element of judgment, the judgment must be of the kind that was intended to be protected.  <u>Gaubert</u>, 499 U.S. at 322-23.

In this case, third party plaintiff claims that FAA regulations in effect at the time of the accident imposed mandatory, not discretionary, duties on FAA inspectors.  It also asserts that FAA personnel failed to perform those mandatory duties, and that this failure precipitated the accident.  The challenged duties break down into two distinct categories: 1) granting the Waiver; and 2) monitoring compliance with the terms of the waiver.  The McGrath Estate alleges that guidelines for exercising both types of duty are set forth in the FAA's General

8

Aviation Operation Inspector's Handbook - Order 8700.1 ("Inspector's Handbook"), the Waiver, and FAA Advisory Circular 91-45C ("Circular"), and that these guidelines are "mandatory" in nature.

The government says that at the time of the accident there were no regulations mandating non-discretionary participation by FAA personnel in the conduct of general aviation airshows. Instead, the government argues that at the time of the accident the FAA role was limited to general oversight, and to waiving certain restrictive FARS by issuing Certificates of Waiver. Finally, the government argues that the FAA enjoys broad discretion in both granting and monitoring compliance with a Waiver, and that in this case the FAA inspector's actions were firmly grounded in general national policy of promoting air safety.

### A. The Decision to Grant the Waiver

In its opposition to the United States' motion to dismiss, the McGrath Estate first claims that the FAA was negligent in granting the Waiver for the airshow. The FAA is responsible for granting or denying Waivers for airshows. The Inspector's Handbook states:

> Application Incomplete or Inaccurate - If the
> application is incomplete or the information
> is inaccurate, complete the FAA action block
> on FAA Form 7711-2 by marking "disapproved."
> Write reason for disapproval in the "Remarks"
> section.  Return the application to the
> applicant.

Inspector's Handbook, Chapter 49, Section 2, ¶ 9B, p.49-30,31.

The Application for Certificate of Waiver or Authorization for the Lebanon-Riverside Airshow failed to list the names of several performers who ultimately participated in the show; among those not included were the Pond skydivers and their jump plane pilot.  The McGrath Estate alleges that the FAA was negligent in issuing the Waiver because the application was incomplete.

On their face, the facts plead by the McGrath Estate are analogous to those in Berkovitz, 486 U.S. 531 (1988).  In Berkovitz, the Court held that the discretionary function exception did not bar a claim that the federal government was negligent in issuing a license to produce a polio vaccine.  The applicable statutes and regulations required, as a precondition to licensing, that the government collect certain test data from the manufacturer regarding the vaccine's compliance with regulatory standards.  If the government did not collect the required data, the Court held, it did not have the discretion to issue the license.  Id. at 542.  Therefore, the decision to issue

10

the license on the basis of information that did not satisfy the applicable regulations did not fall within the discretionary function exception to the FTCA. Id. at 543. Here, the McGrath Estate alleges that the FAA granted a Waiver for the airshow without collecting from the organizer the names and qualifications of all participants as required by the Inspector's Handbook.

Despite these facial similarities, this court cannot deny the United States' motion to dismiss on the grounds that the FAA's decision to grant the Waiver falls outside of the discretionary function exception. As noted above, the McGrath Estate raised this claim for the first time in its opposition to the United States' motion to dismiss; the third-party complaint does not claim that the FAA was negligent in issuing the Waiver. While the decision to issue the Waiver may not be discretionary under Berkovitz, the McGrath Estate has failed to allege any facts linking the issuance of the Waiver to the accident or any losses sustained by the Estate. Because the element of causation is missing, the United States is entitled to judgment as a matter of law on this issue.

11

**B.    Monitoring Compliance with the Waiver**

Also before the court is the McGrath Estate's claim that the FAA was negligent in monitoring compliance with the Waiver. The United States claims that such monitoring functions are discretionary, not mandatory, in nature and, therefore, fall within the discretionary function exception to the FTCA.

**1.    The Discretionary Nature of the Inspector's Actions**

Under Gaubert, the McGrath Estate must first show that the challenged acts or omissions are not discretionary in nature, that they do not "`involve an element of judgment or choice.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536). "The requirement of judgment or choice is not satisfied if a `federal statute, regulation, or policy specifically prescribes a course of action for a governmental employee to follow,' because `the employee has no rightful option but to adhere to the directive.'" Id. (quoting Berkovitz, 486 U.S. at 536).[4] The

---

[4] It is important to note that "[w]hen the government performs a discretionary function, the exception to the FTCA applies regardless of `whether or not the discretion involved be abused.' 28 U.S.C. § 2680(a). The question of . . . negligence, therefore, is irrelevant." Redmon v. United States, 934 F.2d 1151, 1157 (10th Cir. 1991)(emphasis added); see also Brown v.

12

nature of the conduct, rather than the status of the actor, governs whether the discretionary function exception applies. Id. Therefore, in order to support its contention that the discretionary function exception is inapplicable, the McGrath Estate must identify specific and mandatory regulations prescribing the FAA inspector's actions.

In attempting to bear this burden, the McGrath Estate cites numerous passages from chapters 49 and 50 of the Inspector's Handbook, the Special Provisions accompanying the Waiver, and the Circular. The following passage typifies language the McGrath Estate labels as "mandatory":

> The inspector's responsibility is to provide adequate surveillance of the aviation event and to ensure compliance with the provisions of the certificate.

Inspector's Handbook, Chapter 50, Section 1, ¶ 7A, p. 50-1 (emphasis added).

At first blush, the passages cited by the McGrath Estate appear to describe duties that are mandatory, not discretionary, in nature. Closer inspection, however, reveals that the FAA inspector was not performing mandatory duties, but discretionary

United States, 790 F.2d 199, 202-203 (1st Cir. 1986), cert. denied, 479 U.S. 1058 (1987).

monitoring functions for which the United States cannot be held liable under the FTCA.

In _Varig Airlines_, 467 U.S. 797 (1984), the Supreme Court considered a set of facts quite similar to those at issue here. Plaintiff airline brought suit against the United States under the FTCA, seeking, _inter_ _alia_, damages for the destruction of plaintiffs' Boeing 707 aircraft. The airline alleged that the FAA was negligent in issuing a "type certificate"[5] for the Boeing 707 because the lavatory trash receptacle did not meet applicable FAA safety regulations. _Id._ At issue was the FAA's certification process for new types of aircraft and whether FAA inspectors were permitted any discretion in their conduct of the certification process.

The certification process required a manufacturer to develop plans and specifications for the proposed aircraft which were consistent with applicable rules, after which the FAA conducted a "spot-check" in order to determine whether the manufacturer had complied and whether a type certificate should be issued, certifying that the aircraft met FAA requirements. _Id._ at 816-

---

[5] "Before introducing a new type of aircraft, a manufacturer must first obtain from the FAA a type certificate signifying that the basic design of the aircraft meets the minimum criteria required in the safety regulations promulgated by the FAA." _Varig Airlines_, 467 U.S. at 800 n.1.

14

17. The FAA developed "handbooks" that detailed how FAA inspectors were to conduct the compliance "spot-checks." Id. at 817. The pivotal issue in Varig Airlines concerned whether the language of these manuals imposed mandatory duties on the FAA inspectors, such that the discretionary function exemption was not available in subsequent tort claims based on their failure to comply with the manuals' directives.

The handbooks at issue in Varig Airlines contained language remarkably similar to that which the McGrath Estate claims to be mandatory in this case. For example, the FAA handbook stated, in pertinent part:

> Regardless of the manufacturer's experience, it is the . . . [FAA] inspector's responsibility to assure that a complete conformity inspection has been performed by the manufacturer and that the results of this inspection are properly recorded and reported.

Id. at 818 (emphasis added). Rather than conclude that the FAA inspectors had a mandatory duty to guarantee compliance, the Court held that the inspector's actions fell within the discretionary function exception to the FTCA. Id. at 819-20.

Despite the seemingly mandatory language at issue, the Varig Airlines Court found that the tenor of the "duty to ensure that

15

an aircraft conforms to FAA safety regulations <u>lies with the manufacturer and operator</u>." <u>Id.</u> at 816 (emphasis added). The FAA, on the other hand, merely "retains the responsibility for policing compliance" with the regulations. <u>Id.</u> In performing this monitoring function, the FAA and its inspectors were found to be exercising discretion:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, <u>it is exercising discretionary regulatory authority of the most basic kind</u>. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.

<u>Id.</u> at 819-20 (emphasis added).

Here, as in <u>Varig Airlines</u>, ultimate responsibility for complying with the Waiver and the applicable air traffic regulations rested with the holders of the Waiver, not the government. The Certificate of Waiver or Authorization issued to Parker contained, in its "Standard Provisions," a clause clearly stating, "The holder of this certificate shall be responsible for the strict observance of the terms and provisions contained herein." (Defense Ex. 2 at 5.) The "Special Provisions"

16

accompanying the waiver noted, "The holder of the Certificate of Waiver . . . shall inform the issuing FAA office, in writing, of the person named to ensure the overall safety of the aviation event." (Defense Ex. 2 at 9.) In addition, the Inspector's Handbook upon which the McGrath Estate heavily relies states, "The sponsor's responsibilities include, but are not limited to: (1) Complying with all terms and limitations of the waiver or authorization." Chapter 50, section 1, ¶ 13D(1), p. 50-3.

Because primary responsibility for complying with the Waiver and its provisions rested with the airshow organizers and not with the FAA inspector, and the inspector's challenged actions were part of the FAA's monitoring function, the passages labelled "mandatory" by the McGrath Estate are properly seen as "mandatory" only in the sense that they describe the FAA's choice as to how its inspectors may exercise the FAA's discretionary oversight function most effectively and efficiently. The FAA's monitoring function remains a discretionary one; an inspector's failure to adhere to the Inspector's Handbook or Circular at best constitutes an abuse of that discretion. The instructions did not deprive the FAA inspector of every "rightful option but to adhere to the directive." Gaubert, 499 U.S. at 322; see also (Declaration of John H. Theim at 5.). Instead, the Waiver,

17

Inspector's Handbook, and Circular empower FAA inspectors to "ensure" through discretionary compliance monitoring that the airshow sponsors and participants themselves are fulfilling their duty to follow applicable safety rules.  As concluded in Varig Airlines, monitoring the safety procedures of private individuals is "discretionary regulatory authority of the most basic kind." Varig Airlines, 467 U.S. at 819-20.  Therefore, although it might be argued that the FAA inspector abused the discretion vested in him, he nevertheless was exercising the requisite judgment, and the challenged actions come within the discretionary function exception to the government's waiver of sovereign immunity.

### 2.    Policy Considerations

Under the two-prong test in Gaubert, once the challenged conduct is found to require the exercise of judgment, the court must determine whether the judgment is of the kind that was intended to be protected by the exception.  Gaubert, 499 U.S. at 322-23.  The purpose of the exception is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.  Id. at 323 (citing Varig Airlines, 467 U.S. at 813).  Therefore, "the exception `protects only

18

governmental actions and decisions based on considerations of public policy.'" Id. (citing Berkovitz, 486 U.S. at 537).

The Gaubert Court held that "[w]hen established governmental policy, as expressed by or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. Therefore, the McGrath Estate bears the burden of showing that the FAA inspector's actions were not grounded in FAA policy.

Under the Federal Aviation Act (the "Act"), 49 U.S.C § 1421(a)(1), Congress directed the Secretary of Transportation "to promote the safety of flight of civil aircraft in air commerce by establishing minimum standards." Varig Airlines, 467 U.S. at 804. The Act gives the Secretary broad discretion to establish rules that promote the policy goal of air safety. 49 U.S.C. § 1421(a)(3); See also Varig Airlines, 467 U.S. at 804. The FAA acting as the Secretary's designee, is in turn given the discretion necessary to set minimum safety standards to accomplish the goal of safe air travel. See Varig Airlines, 467 U.S. at 804-05.

The McGrath Estate fails to allege any facts which would support a finding that the FAA's conduct was <u>not</u> the kind that "can be said to be grounded in the policy of the regulatory regime." <u>Gaubert</u>, 499 U.S. at 325. Instead, the challenged conduct (monitoring compliance with the Waiver) of the FAA inspector falls squarely within the FAA's charge to promote the safety of flight of civil aircraft. 49 U.S.C. app. §§ 1421, as well as its general charge to promote civil aviation by facilitating the conduct of airshows.

Because the FAA inspector's challenged actions satisfy both prongs of the discretionary function test, as articulated in <u>Gaubert</u>, this court lacks subject matter jurisdiction over the McGrath Estate's FTCA claim.[6]

---

[6] Because this court is without subject matter jurisdiction over this claim pursuant to section 2680 of the FTCA, it is not necessary to address third party plaintiff's wrongful death and contribution actions against the government. Even if the discretionary function exception was inapplicable, however, this court would still lack jurisdiction over the wrongful death claim because third party plaintiff failed to exhaust its administrative remedies prior to initiation of this suit, as required by section 2675(a). 28 U.S.C. § 2675(a) ("[T]he claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been firmly denied by the agency in writing . . . ."); <u>see</u> <u>also</u> <u>Cotto v. United States</u>, 993 F.2d 274, 280 (1st Cir. 1993) ("Exhaustion of plaintiffs' administrative remedies is a jurisdictional prerequisite to the prosecution of their FTCA claims."); <u>Keene Corp. v. United States</u>, 700 F.2d 836, 840 (2d. Cir.) ("The Federal Tort Claims Act, 28 U.S.C. §§1346(b) and 2671-2680, requires that a claimant

## IV. CONCLUSION

For the foregoing reasons, the discretionary function exception to the Federal Tort Claims Act applies to deprive the court of subject matter jurisdiction over third party plaintiff's claims against the United States. Accordingly, the Government's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is granted.

---

against the federal government file an administrative claim with the appropriate agency prior to institution of suit."), cert. denied, 464 U.S. 864 (1983). Prior to initiating this suit, third party plaintiff neither filed a claim with the appropriate administrative agency nor exhausted its administrative remedies. Third party plaintiff's letter of July 21, 1995, to the FAA's Regional Headquarters does not satisfy section 2675(a) as it came nearly one year after initiation of this suit. It is true that section 2675(a) does allow for an exception to the administrative filing requirement, stating "[t]hat provisions of this subsection shall not apply to such claims as may be asserted . . . [by] third party complaint[s]" brought pursuant to Fed. R. Civ. P. 14. 28 U.S.C. § 2675(a). Under Rule 14, however, "an entirely separate claim may not be asserted against a third party . . . , even though it arises out of the same general set of facts as the main claim. There must be an attempt to pass on to the third party all or part of the liability asserted against the defendant." 3 Moore's Federal Practice ¶ 14.07[1] at 14-52 (2d.1990). In this case, third party plaintiff's wrongful death claim seeks recovery against the United States independent of the plaintiff's original claim and as such is not a proper third party complaint under Rule 14. See Northridge Bank v. Community Eye Care Center, Inc., 655 F.2d 832, 836 (7th Cir. 1981). Therefore third party plaintiff does not qualify for the exception under section 2675(a). Because third party plaintiff's wrongful death action does not fit within section 2675(a), this court does not have jurisdiction over the claim.

21

SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

September 29, 1995

cc:  Michael G. Gfroerer, Esq.
     Jeffrey B. Osburn, Esq.
     David B. Kaplan, Esq.
     Garry R. Lane, Esq.
     Charles W. Grau, Esq.
     Mark Scribner, Esq.
     David H. Bradley, Esq.
     Douglas J. Miller, Esq.
     Michael G. McQuillen, Esq.
     Richard B. Couser, Esq.
     Scott A. Ewing, Esq.
     Ronald L. Snow, Esq.
     James C. Wheat, Esq.
     Gretchen Leah Witt, Esq.
     Thomas K. Pfister, Esq.